*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SHWANIKI LATINA PRICE,

      Defendant-Appellant.

UNPUBLISHED
February 28, 2019

No. 339905
Genesee Circuit Court
LC No. 16-040628-FH

Before: TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of assault with a dangerous weapon (felonious assault), MCL 750.82, and fourth-degree child abuse, MCL 750.136b(7). The trial court sentenced defendant to 24 months' probation for both convictions. We affirm.

## I. FACTS

The present charges arise from defendant's alleged assault of her 15-year-old daughter, JC,[1] who resided in an apartment with defendant and defendant's son Jahil Price. On the evening of November 26, 2016, defendant and JC had a heated argument after JC became frustrated that the apartment's wireless connection was not working. Defendant called JC ungrateful and threatened that she could go live with her father, Christopher Crawford. Planning to leave the apartment and stay with Crawford, JC packed her clothes into several bags, including a backpack. Meanwhile, defendant called Crawford numerous times but received no answer. When JC finished packing her bags, she attempted to leave through the front door near the kitchen. JC alleged that, as she unlocked the front door, defendant grabbed a small knife from the kitchen, told JC that she was not leaving, and cut the shoulder straps of JC's backpack with the knife. Defendant continued to yell and wave the knife, the blade coming close to JC's hand

---

[1] Because the complainant is a minor, we decline to identify her by name.

and cutting the sleeve of her coat. However, JC testified that she was not fearful, as she knew defendant would not harm her.

With defendant blocking the front door, JC attempted to access the balcony to climb down to the ground floor of the building. JC testified that defendant followed her, began pulling her hair, and pushed her onto the couch. JC called 911 as defendant allegedly fought her for the phone. On the 911 recording, which was played for the jury, JC could be heard screaming and saying "let go of me" and "help me." According to JC, after she called the police, defendant pushed her out the front door, where JC remained until the police arrived. Responding officers located the backpack with cut straps and additionally noted that the balcony door was ajar and that the couch appeared disheveled. The officers were unable to locate the knife. Defendant was arrested and was brought directly to lockup due to her uncooperative behavior.

Defendant testified at trial as to her account of the alleged events. Specifically, defendant stated that she attempted to keep JC from leaving the apartment until she was able to reach Crawford. Although defendant admitted to blocking JC from the balcony and attempting to take the phone from her, she denied either threatening JC with a knife or striking her. Defendant also admitted that she cut the straps on JC's backpack with kitchen shears in an effort to "buy time" and prevent JC from leaving. Defendant maintained that JC was neither wearing the backpack nor inside the apartment at the time she cut the straps. However, when questioned on cross-examination why she would need to buy time when JC had already left the apartment, defendant retracted that explanation, claiming to have been confused and drowsy from medication. Instead, defendant stated she cut the straps because she was being petty. A jury found defendant guilty of both felonious assault and fourth-degree child abuse. Defendant now appeals.

## II. ANALYSIS

### A. OTHER ACTS EVIDENCE

On appeal, defendant contends that, in violation of MRE 404(b)(1), the trial court erroneously permitted the prosecution to present other-acts evidence concerning two prior incidents in which defendant allegedly assaulted JC. Specifically, defendant maintains that this evidence was not only irrelevant to any permissible purpose under MRE 404(b)(1) but also more prejudicial than probative. We disagree.

In order to preserve an evidentiary issue for appellate review, a party opposing the admission of evidence must object at trial on the same grounds asserted on appeal. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Because defendant failed to raise before the trial court the arguments advanced on appeal,[2] we find this issue is unpreserved. "Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's

---

[2] Defendant argued before the trial court that the prosecution had provided only the police reports associated with each incident but not the current status of any charges arising from those incidents. However, defendant did not challenge either the relevancy or the prejudicial effect of the evidence.

substantial rights." *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011). An error is plain if it is clear or obvious, while an error affects substantial rights insofar as it prejudiced the defendant by affecting the outcome of the proceedings before the trial court. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error does not warrant reversal unless it "resulted in the conviction of an actually innocent defendant" or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id*. at 763-764 (quotation marks and citation omitted).

Under MRE 404(b)(1), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." This rule seeks to reduce the risk that a jury might convict a defendant "inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged." *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998). Nevertheless, MRE 404(b)(1) permits admission of evidence concerning prior acts for purposes that do not implicate this risk, including proof of motive, intent, scheme, plan, or system in doing an act, or absence of mistake or accident. Thus, in admitting other-acts evidence, trial courts must ensure that the evidence is offered for a proper purpose, that the evidence is relevant, and that the probative value of the evidence is not outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993). Additionally, a party opposing the admission of evidence may request that the trial court deliver a limiting instruction to the jury. *Id*.

In the present case, the prosecution sought to admit evidence regarding two prior instances of assault by defendant against JC. The first incident occurred on October 15, 2015, following JC's high school volleyball game. According to JC, when the game ended, defendant argued with JC, hit her with a purse, and left the building. However, defendant returned shortly thereafter and charged JC, pushing her down the bleachers and punching her with a closed fist.[3] Coaches and other parents pulled defendant off of JC and called the police. JC's account was consistent with the testimony of eyewitness Laquendra Brown. As a result of this incident, defendant pleaded guilty to disorderly conduct. The second incident occurred in June 2016. In the days prior to the incident, JC testified that she and defendant had been having frequent arguments, during which defendant would push JC and throw things. On June 27, 2016, defendant became upset with JC for posting an inappropriate picture of herself on social media. According to JC, defendant struck her on the head and called her a "hoe."[4] JC further testified that defendant threatened to kill her and that Jahil later told her that, during the dispute, defendant had gone into her bedroom to retrieve a pocket knife. The trial court permitted the prosecution to introduce evidence regarding both incidents, finding that the evidence was "highly admissible" for the proper purposes of showing intent and the absence of mistake or accident.

---

[3] While defendant denied punching JC, she admitted she lightly pushed her and hit her with her purse to get her attention.

[4] Defendant denied striking JC but admitted she told JC that the behavior exhibited in the picture was "acting like a 'hoe.' " Defendant stated that JC then left the apartment and that she reported JC to the police as a runaway.

The trial court did not plainly err in concluding that the other-acts evidence was admissible under MRE 404(b)(1) for the proper purposes of showing defendant's intent or lack of mistake or accident. Moreover, the evidence was admissible for the proper purpose of demonstrating defendant's common scheme or system of physical violence against JC. General similarity between charged and uncharged acts is insufficient to render evidence of the uncharged acts admissible as a common scheme or system. *People v Sabin*, 463 Mich 43, 64; 614 NW2d 888 (2000). Rather, the acts must have "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." *Id*. (quotation marks, citations, and emphasis omitted). Here, the charged and uncharged acts demonstrate defendant's alleged pattern of resorting to physical violence as a method of discipline when she argued with or became angry with JC. Both of the prior incidents involved allegations that defendant violently struck and yelled at JC for perceived disrespect or misbehavior, while one of the prior incidents involved the allegation that defendant threatened JC with a knife. Accordingly, these prior acts are sufficiently similar to the charged act such that they were properly admissible under MRE 404(b)(1) for the purposes of demonstrating defendant's intent, absence of mistake or accident, and common scheme or system of using physical violence to discipline JC.

Even if the other-acts evidence was not admissible under MRE 404(b)(1), it would have been admissible under MCL 768.27b as evidence of defendant's character or propensity to commit acts of domestic violence. MCL 768.27b(1) provides as follows:

> Except as provided in subsection (4),[5] in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

"Domestic violence" is statutorily defined as one of the following actions, unless that action is undertaken in self-defense:

> (*i*) Causing or attempting to cause physical or mental harm to a family or household member.

> (*ii*) Placing a family or household member in fear of physical or mental harm.

> (*iii*) Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress.

---

[5] The exception set forth in subsection (4), which is inapplicable here, excludes evidence of acts that occurred more than 10 years before the charged offense, unless the trial court determines that admitting such evidence is in the interest of justice. MCL 768.27b(4).

(*iv*) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested. [MCL 768.27b(5)(a).]

In the present case, defendant is accused of an offense involving domestic violence, as she allegedly assaulted and brandished a knife at JC, her daughter who resided with her. Likewise, the other-acts evidence also concerns acts of domestic violence by defendant, namely allegedly pushing JC down a set of bleachers and punching her after a volleyball game and allegedly striking JC on the head and threatening to kill her for posting an inappropriate picture. Such behavior would certainly cause a reasonable person to feel frightened, intimidated, threatened, or harassed. In fact, JC testified that she felt frightened during the two prior incidents and felt threatened enough to call 911 during the incident at issue. Accordingly, the other-acts evidence was admissible for the purpose of proving any issue, including defendant's character or propensity toward committing acts of domestic violence. See *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011).

We also conclude that, in accordance with MRE 403, the other-acts evidence was neither unfairly prejudicial, nor was its probative value substantially outweighed by its prejudicial effect. In evaluating the prejudicial effect of evidence, courts are to consider

> the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock. Moreover, admission of [e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury. [*Id*. at 611 (quotation marks and citations omitted).]

The prosecution's presentation of the other-acts evidence through the testimony of JC, Laquendra Brown, Crawford, and responding Officer Christopher Miller was limited to factual descriptions of the events. The substance of this testimony was therefore unlikely to inflame the jurors' passions such that they would be unable to rationally determine defendant's guilt or innocence. Additionally, the trial court minimized any prejudicial effect by instructing the jury that the other-acts evidence must not be construed as evidence of defendant's character or propensity and that the jury must not convict defendant on the basis of her guilt or innocence of these uncharged acts. The prejudicial effect of this evidence therefore does not outweigh its probative value, and we conclude that the trial court did not plainly err by admitting it.

## B. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant also contends that trial counsel provided ineffective assistance by (1) failing to include a witness on the defense witness list, (2) eliciting damaging testimony from Crawford and JC, and (3) failing to argue that the other-acts evidence was more prejudicial than probative. Again, we disagree.

In order to preserve a claim of ineffective assistance of trial counsel, a defendant must move in the trial court for a new trial or an evidentiary hearing. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant did not file a motion before the trial court for a new

trial or for an evidentiary hearing, and her motion to remand filed before this Court was denied. Accordingly, because we find that defendant's claim of ineffective assistance is unpreserved, our review is limited to mistakes apparent on the record. *Id.*

In order to prevail on a claim of ineffective assistance of trial counsel, a defendant must demonstrate (1) that counsel's representation "fell below an objective standard of reasonableness under prevailing professional norms" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (quotation marks and citations omitted). A court's review of counsel's performance is "highly deferential," and a defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Additionally, a defendant must overcome the presumption that counsel's challenged actions were the products of sound trial strategy. *Id.* "This Court does not second-guess counsel on trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017).

## 1. FAILURE TO NAME A WITNESS

Defendant first contends that trial counsel provided ineffective assistance by failing to name Jerry Brackett, Jr., on the witness list. The witness list included, among other witness designations, the generic designation of "[a]ny and all necessary impeachment witnesses," without identifying Brackett or any other impeachment witness by name. When trial counsel attempted to call Brackett as a defense witness, the trial court precluded him from testifying because he had not been identified as a potential witness.

"Trial counsel's failure to a call a witness is only considered ineffective assistance if it deprived the defendant of a substantial defense. A substantial defense is one that could have affected the outcome of the trial." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015) (citations omitted). On appeal, defendant submits Brackett's affidavit stating that he would have testified that he observed JC lying on several occasions. Under MRE 608(a), a witness's credibility may be attacked through opinion or reputation evidence regarding the witness's character for untruthfulness. Generally, specific instances of a witness's conduct may not be introduced for this purpose unless, on cross-examination, the trial court determines the evidence to be probative of the truthfulness or untruthfulness of either the testifying witness or another witness. MRE 608(b).

We are unable to determine with any degree of certainty the weight or credibility the jury would have accorded Brackett's testimony had he testified regarding his opinion of JC's character for untruthfulness. Brackett's affidavit does not provide any foundation for or context surrounding Brackett's opinion, such as his relationship to JC or the extent of his familiarity with JC. In the absence of any context, it is impossible to discern the strength of Brackett's

testimony, let alone to conclude that this testimony could have affected the outcome of trial.[6] Defendant thus failed to establish the factual predicate for his ineffective-assistance claim on this ground.

## 2. ELICITING DAMAGING TESTIMONY

Defendant contends that trial counsel provided ineffective assistance by eliciting unfavorable testimony from Crawford, both on cross-examination and upon recalling him as a defense witness. Specifically, defendant claims that trial counsel elicited the following damaging testimony: (1) that Crawford chose not to exercise parenting time and did not want defendant to know where he lived because defendant had assaulted him and damaged his property, (2) that defendant had assaulted her older son Jahil with a knife, and (3) that Child Protective Services (CPS) had become involved in establishing a protective plan for JC following the June 2016 incident.

With respect to Crawford's statement that he stopped exercising parenting time because defendant assaulted him, this response was elicited when trial counsel questioned him regarding the minimal amount of parenting time he exercised with JC before the June 2016 incident. Trial counsel sought to strike as beyond the scope of her question the portion of Crawford's testimony explaining that defendant had assaulted him; however, the trial court declined to do so. Crawford subsequently testified that he did not want defendant to know where he lived because she previously assaulted him and damaged property belonging to both him and his girlfriend. This testimony was initially elicited not by trial counsel but rather by the prosecution on redirect examination. Crawford subsequently repeated his allegations regarding defendant's assault and property damage when trial counsel recalled him as a witness and again questioned him regarding the extent of his involvement in raising JC. However, these allegations had already been elicited by the prosecution. Although trial counsel's decision to question Crawford regarding parenting time resulted in some unfavorable testimony, counsel reasonably and strategically attempted to undermine Crawford's ability to formulate a knowledgeable opinion of JC's character for truthfulness. Because this Court refrains from second-guessing trial counsel's strategic decisions with the benefit of hindsight, we conclude that trial counsel did not fail to provide effective assistance on this basis.

Trial counsel also elicited testimony from Crawford that defendant threatened Jahil with a knife. Specifically, trial counsel asked Crawford on cross-examination whether JC told him that she was not frightened when defendant cut the straps of her backpack with the knife. Crawford responded that JC told him she was unafraid because defendant had previously pulled a knife on Jahil but did not injure him. Accordingly, the record clearly demonstrates that trial counsel strategically sought to elicit testimony that JC was not fearful during the incident underlying the present charges. Although trial counsel also elicited the unfavorable testimony that defendant had previously pulled a knife on Jahil, defendant has failed to overcome the presumption that the testimony was the product of sound trial strategy. Indeed, "[a] strategy [does] not 'constitute

---

[6] Moreover, trial counsel established through Jahil's testimony that JC had a poor reputation for truthfulness.

ineffective assistance of counsel simply because it [did] not work.' " *Heft*, 299 Mich App at 84 (citation omitted). Therefore, trial counsel did not provide ineffective assistance on this basis.

With respect to Crawford's testimony that CPS became involved in establishing a protective plan for JC following her dispute with defendant in June 2016, Crawford first mentioned this fact in response to direct examination by the prosecution. Crawford also mentioned CPS's involvement in response to trial counsel's general questions regarding Crawford's custody, parenting, and discipline of JC after June 2016. However, any damage caused by Crawford's references to CPS had already registered when Crawford raised this fact in response to the prosecution's questioning. Further, defendant fails to demonstrate that the outcome of trial would have differed absent this testimony. We therefore conclude that defendant has not shown that trial counsel's performance amounted to ineffective assistance on this ground.

Defendant next contends that trial counsel was ineffective for eliciting unfavorable testimony upon recalling JC as a witness. In particular, defendant challenges trial counsel's elicitation of JC's testimony that she was fearful of defendant during the two prior incidents, after the volleyball game in October 2015 and after JC posted an inappropriate picture to social media in June 2016. JC had previously testified on direct examination by the prosecution that she was not fearful when defendant cut her backpack straps with the knife. Additionally, Crawford confirmed that JC told him she had been unafraid. As conceded by defendant, trial counsel asked JC whether she had been afraid during the two prior incidents in the expectation that JC would state that she had not been afraid, consistent with her feelings with respect to the incident underlying the present charges. Indeed, trial counsel's questioning suggests that she took a calculated risk in an effort to elicit from the victim that she was merely upset and not scared, that this behavior was typical for defendant, and that defendant was not violent. Moreover, there is no indication that trial counsel was aware that the victim would state that a knife had been involved during the incident in June 2016. Although trial counsel's strategy did not work, her performance did not amount to ineffective assistance. See *id*. Therefore, in light of the reasonably strategic purpose underlying trial counsel's questioning, defendant has failed to overcome the presumption of sound trial strategy.

### 3. FAILURE TO ARGUE OTHER-ACTS EVIDENCE WAS MORE PREJUDICIAL THAN PROBATIVE

Defendant next asserts that trial counsel was ineffective for failing to argue that the other-acts evidence discussed above was more prejudicial than probative under MRE 403. Consistent with our analysis above, however, we find that the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice. Because trial counsel was not ineffective for failing to make a meritless argument, we reject defendant's claim of ineffective assistance on this ground. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### 4. CUMULATIVE EFFECT

Finally, defendant argues that, when trial counsel's errors are considered cumulatively, they demonstrate that her performance fell below an objective standard of reasonableness. "It is

true that '[t]he cumulative effect of several minor errors may warrant reversal where the individual errors would not.' " *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008), quoting *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003).  However, because defendant has failed to establish any errors in trial counsel's performance, there are no individual errors that can be aggregated to form a cumulative effect.  See *id*.

Affirmed.

/s/ Jonathan Tukel
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola