*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LEROY HOSKINS,

      Defendant-Appellant.

UNPUBLISHED
October 1, 2019

No. 343678
Wayne Circuit Court
LC No. 17-005905-01-FC

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

A jury convicted defendant, LeRoy Hoskins, of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b.[1] The trial court sentenced him as a fourth habitual offender, MCL 769.12, to 15 to 40 years' imprisonment for felon-in-possession, to be served consecutively to five years' imprisonment for felony-firearm. Defendant's sole challenge on appeal is to his sentence. We affirm.

According to the testimony at defendant's trial, the victim, Serena Carson, received an insurance payout of $2,580 related to her mother's death. She kept the money in her bra. Defendant and Joshua Polk, Carson's new boyfriend, were among those drinking and using cocaine and marijuana at Carson's house on the night someone robbed and murdered her. Police arrested and charged defendant and Polk for the robbery and shooting death. At trial, Polk testified against defendant. Defendant waived his right to testify, but the jury heard defendant's version of events when enforcement personnel testified to defendant's oral and written statements. Both Polk and defendant maintained that they had planned to rob Carson but not to kill her, but each claimed that the other had been the shooter. Crediting defendant's statements,

---

[1] The jury acquitted defendant on the charges of first-degree premeditated murder, MCL 750.316(1)(a), felony murder, MCL 750.316(1)(b), and armed robbery, MCL 750.529.

the jury acquitted him of the murder and armed robbery charges, but convicted him of felon-in-possession and felony-firearm. The trial court sentenced defendant as indicated above.

On appeal, defendant argues that his sentence of 15 to 40 years' imprisonment for felon-in-possession is unreasonable. We disagree.

"This Court reviews an out of guidelines sentence for reasonableness." *People v Lampe*, ___ Mich App ___, ____; ___ NW2d ___ (2019) (Docket No. 342325); slip op at 10. "[A] sentence is reasonable under *Lockridge* if it adheres to the principle of proportionality set forth in *Milbourn*."[2] "*Milbourn's* principle of proportionality requires the sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Lampe*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted). A sentencing court abuses its discretion when it violates this principle of proportionality. *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d 327 (2017). Additionally, even though the sentencing guidelines are advisory, " '[s]entencing courts must . . . continue to consult the applicable guidelines range and take it into account when imposing a sentence . . . [and] justify the sentence imposed in order to facilitate appellate review.' " *Id*. at 470, quoting *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "An out-of-guidelines sentence may be imposed when the trial court determines that the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Id*. (quotation marks and citation omitted).

Factors a trial court may consider under the proportionality standard include:

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Id*. at ___; slip op at 10-11 (quotation marks and citation omitted).]

Defendant's minimum sentencing guidelines range for felon-in-possession, fourth habitual offender, was 19 to 76 months' imprisonment. The trial court sentenced defendant to a minimum prison term of 15 years (180 months) imprisonment for this offense.[3] After noting the minimum sentencing guideline range for defendant's felon-in-possession conviction, observing that it had to calculate and consider the guidelines, which now were advisory, but that it could

---

[2] *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

[3] As a fourth habitual offender, defendant faced a maximum possible sentence of life in prison for the felon-in-possession conviction. The trial court sentenced him to a maximum of 40 years. Defendant does not argue in his brief how the trial court's maximum sentence is disproportionate.

depart from the guidelines and the appellate court would review a departure sentence for reasonableness, the court explained:

> The court believes that the sentence that it's going to impose on Mr. Hoskins is both reasonable and proportionate to both Mr. Hoskins as well as the offenses that he's convicted of committing here.

> The Court notes that Mr. Hoskins is forty-four years of age. The sentencing guidelines do not take into account – or I should say while they take into account what his convictions are, they do not take into account that his first criminal conduct or contact occurred when he was thirteen years of age as the juvenile adjudication that has been placed on the record here.

> The guidelines also do not take into account that Mr. Hoskins' criminal history has spanned thirty-one years, from the time he was thirteen until this [sic] offenses here were committed when he was thirty-one [sic] years of age.

> The guidelines do not take into account the fact that Mr. Hoskins has been found guilty of two hundred and ninety-seven misconducts.[4] The People's sentencing memorandum has these attached. The presentence investigation report notes these and as noted amongst these are a hundred and thirty-eight offenses which would be considered crimes against persons, felonies, but they include thirty-nine assault and batteries against staff or clients, three assault and batteries against prisoners including one recent assault which resulted in serious physical injury, fifty-eight sexual assaults or misconducts, seven fighting misconducts and thirty-one misconducts for threatening behavior including one recently and Mr. Hoskins has ten misconducts for possession of a weapon or dangerous contraband.

The court also considered defendant's apparent disregard for the requirements of parole, noting that when he first obtained parole in 2004, he had not adjusted well and had absconded for a period, and further observing that defendant was on parole when he committed the offenses at issue here. The court found that Carson's death or serious bodily injury was a reasonably foreseeable outcome of the plan defendant hatched with Polk, and opined that defendant was "incapable of being rehabilitated" because of his immaturity, self-absorption, and failure to "appreciate the risks of his actions." The court found that defendant's "past criminal behavior [was] a good indicator of his future criminal conduct," and that defendant was a danger to society.

We find no abuse of discretion on the part of the trial court. The court correctly calculated and considered the sentencing guidelines, then applied the principle of proportionality by thoroughly analyzing the "seriousness of the circumstances surrounding the offense and the

---

[4] The trial judge noted that he had "never, ever seen any prisoner with this many misconducts."

offender." See *Steanhouse*, 500 Mich at 474. In justifying its upward departure from the minimum sentencing guidelines, the trial court spoke to each of *Milbourn's* proportionality factors. The court addressed the seriousness of the offense by noting that defendant's plan to rob Carson created a reasonably foreseeable risk of great bodily harm or death. The court found that the guidelines inadequately considered the span of defendant's criminal history, which began when defendant was 13 years old.

The court also pointed to several factors not considered by the guidelines. The court justified the extent of its 104-month upward departure from the minimum sentencing guidelines by emphasizing the fact that defendant's prior record variable score did not take into consideration the significant number and effect of defendant's misconducts while in prison. The court noted that if those misconducts had been scored as the criminal offenses to which they equated, they would have "take[n] the guidelines off the charts." The court explained that the scoring guidelines call for an assessment of 20 points where there are seven or more misdemeanors, and that many of defendant's misconducts would equate to misdemeanors. Scoring these, along with the 39 assault and batteries, "would add an extra [100] points." The court also observed that defendant committed them against all manner of persons, i.e., prison staff, clients, and inmates, that his offenses sometimes caused serious injuries, and that defendant's history suggested an inability to be rehabilitated. On appeal, defendant does not address the court's consideration of any of these factors in its sentencing decision, including defendant's prior prison misconducts. Rather, he merely asserts in various ways that his sentence was unreasonable.[5] Because the scoring guidelines did not account for, or inadequately accounted for, the conduct at issue, the trial court was justified in finding that an upward departure sentence was warranted. See *Lampe*, __ Mich App at __; slip op at 10-11.

Defendant also argues that his sentence violates constitutional prohibitions against cruel and unusual punishment. It is not entirely clear from defendant's appellate brief whether the alleged constitutional violation is his felon-in-possession sentence or the result of having to serve this sentence consecutive to and after a five-year sentence for felony-firearm. Regardless, we are unpersuaded. Because defendant did not raise his constitutional challenge in the trial court, our review is for plain error affecting defendant's substantial rights. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013) (observing that claims of unpreserved constitutional error

---

[5] Defendant states in his appellate brief that the trial court sentenced him "as though he had been found guilty of homicide and armed robbery." We understand this as a commentary on the length of defendant's sentence, not an allegation that the trial court based its departure sentence on a preponderance-of-the-evidence finding that defendant had committed the conduct for which the jury had acquitted him. See *People v Beck*, __ Mich __, __; __ NW2d __ (2019) (Docket No. 152934) (holding that due process bars a sentencing court from finding by a preponderance of the evidence that the defendant committed crimes of which the jury acquitted him or her, and basing its sentence on that finding). In the case at bar, the trial court very clearly did not base its departure sentence on defendant's acquitted charges, but on factors for which the sentencing guidelines took inadequate account or no account at all, such as the extraordinary number of prison misconduct tickets of which defendant had been found guilty.

are subject to plain error review). Under plain error review, the defendant bears the burden to show that an error occurred, that it was clear or obvious, and that it "affected the outcome of the lower court proceeding." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). If the defendant establishes a plain error that affected his or her substantial rights, this Court then "must exercise its discretion in deciding whether to reverse." *Id.* Reversal will be "warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant" or when the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted). Defendant's argument fails because he has not met his burden to show that plain error occurred.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishment," US Const, Am VIII, and the Michigan Constitution prohibits "cruel or unusual punishment," Const 1963, art I, § 16. This includes a prohibition against grossly disproportionate sentences. *People v Bullock*, 440 Mich 15, 32; 485 NW2d 866 (1992). "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (quotation marks and citation omitted). Typically, "whether a penalty may be considered cruel or unusual is to be determined by a three-pronged test that considers (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states." *Id.* However, "a sentence that is proportionate is not cruel or unusual punishment." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008).

As indicated above, defendant's departure sentence, as justified by the trial court, is "proportionate to the seriousness of the circumstances surrounding the offense and the offender," *Steanhouse*, 500 Mich at 474. Accordingly, defendant cannot show that plain error occurred. Without this initial showing, he cannot establish plain error affecting his substantial rights, and his unpreserved claim of a constitutional violation necessarily fails. See *Carines*, 460 Mich at 763.

Defendant implies that his sentence is cruel or unusual because it is effectively a life sentence, as he will be 64-years old when he has finished serving his minimum sentence. Even if we were willing to adopt defendant's assumption that life is effectively over at 64 years of age, he cites no authority in support of his assumption that a defendant's age at the end of his minimum sentence turns a proportionate and properly imposed sentence into a cruel and unusual punishment in violation of state and federal constitutional law. This Court has held that a proportionate sentence of 100 years' imprisonment imposed on a 49-year-old defendant was not cruel or unusual. *Bowling*, 299 Mich App at 558. In *Bowling*, the defendant's sentence was presumptively proportionate because it fell within the minimum sentencing guidelines range. In the present case, we deem defendant's sentence proportionate because it fits the seriousness of the circumstances of the offense and the offender. In neither *Bowling* nor in this case is the defendant's age sufficient to overcome proportionality of his sentence, especially given each defendant's lengthy criminal history, violence, and patent disregard for others. See *id.*

Because defendant's sentence is proportionate to the offense and the offender, he cannot show plain error, and thus he cannot show plain error affecting his substantial rights. Thus, under plain-error review, defendant's claim of constitutional error necessarily fails.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Anica Letica