PEOPLE v BENTON

Docket No. 296721. Submitted September 15, 2011, at Detroit. Decided
    September 22, 2011, at 9:00 a.m. Leave to appeal denied, 491 Mich
    917.

    Allanah T. Benton, a former school teacher, was convicted in the
    Genesee Circuit Court, Geoffrey L. Neithercut, J., of two counts of
    first-degree criminal sexual conduct for engaging in sexual inter-
    course with a 12-year-old former student. Benton appealed.

    The Court of Appeals *held*:

    1. Under Michigan's rape-shield statute, MCL 750.520j, evi-
    dence of specific instances of a victim's sexual conduct, opinion
    evidence of the victim's sexual conduct, and reputation evidence of
    the victim's sexual conduct may not be admitted unless and only to
    the extent that the judge finds that the proposed evidence is
    material to a fact at issue in the case and that its inflammatory or
    prejudicial nature does not outweigh its probative value. The
    evidence may only be of the victim's past sexual conduct with the
    actor or of specific instances of sexual activity showing the source
    or origin of semen, pregnancy, or disease. However, evidence that
    is not admissible under one of the statutory exceptions to the
    rape-shield statute may nevertheless be relevant and admissible to
    preserve a defendant's Sixth Amendment right of confrontation.
    In determining whether to admit the evidence, a court must
    consider the significant legislative purposes underlying the rape-
    shield statute and should always favor exclusion of evidence of a
    complainant's sexual conduct when its exclusion would not uncon-
    stitutionally abridge the defendant's right to confront the wit-
    nesses against him or her. In this case, Benton sought to introduce
    evidence that the victim had previously engaged in sexual relations
    with two other girls, but the trial court excluded the evidence under
    the rape-shield statute. Benton argued that the exclusion of the
    evidence had deprived her of her right of confrontation because it
    allowed the prosecution to portray the victim as sexually innocent.
    However, the evidence was not legally relevant because sexual pen-
    etration with a person under 13 years of age constitutes first-
    degree criminal sexual conduct irrespective of the victim's sexual
    history. Further, because the victim never asserted that Benton
    had been his first sexual partner, the evidence was not necessary to

impeach the victim's testimony. Accordingly, the trial court did not abuse its discretion by excluding the evidence.

2. Generally, all relevant evidence is admissible, but relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. In this case, Benton was terminated from her teaching position and the termination was upheld by the tenure commission. The prosecutor referred to the tenure proceeding while cross-examining Benton. Benton argued that the reference was irrelevant and unfairly prejudicial. However, Benton had referred to the tenure proceeding during direct examination, and the cross-examination was responsive. Accordingly, the trial court did not abuse its discretion by allowing cross-examination regarding the tenure proceeding, and to the extent that the questioning improperly suggested that there had already been an official determination that Benton was guilty, any error was harmless in light of the trial court's instruction that the attorneys' questions and statements were not evidence.

3. Under MCL 750.520b(2)(b), a conviction for first-degree criminal sexual conduct is punishable by imprisonment for life or any term of years, but not less than 25 years if the offense is committed by a person who is 17 years of age or older against an individual less than 13 years of age. Benton was, accordingly, sentenced to 25 to 38 years' imprisonment. In determining whether a penalty constitutes cruel or unusual punishment, a court must consider (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states. Benton engaged in a prolonged course of action to isolate the victim and render him susceptible to her approach, and the victim's alleged acquiescence cannot be considered a mitigating factor given his age. Further, the 25-year minimum sentence was not disproportionate in light of the social consequences of sexual offenses against children, and several other states impose similar penalties. Thus, the statutory mandatory-minimum sentence of 25 years in prison was not cruel or unusual, and Benton was not unconstitutionally sentenced.

Affirmed.

1. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE OF PRIOR SEXUAL CONDUCT — RIGHT OF CONFRONTATION.

Under Michigan's rape-shield statute, evidence of specific instances of a victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct

may not be admitted unless and only to the extent that the judge finds that the proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value; the evidence may only be of the victim's past sexual conduct with the actor or of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease; however, evidence that is not admissible under one of the statutory exceptions to the rape-shield statute may nevertheless be relevant and admissible to preserve a defendant's Sixth Amendment right of confrontation; in determining whether to admit the evidence, a court must consider the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct when its exclusion would not unconstitutionally abridge the defendant's right to confront the witnesses against him or her (MCL 750.520j).

2. CONSTITUTIONAL LAW — SENTENCES — CRUEL OR UNUSUAL PUNISHMENT — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT.

In determining whether a penalty constitutes cruel or unusual punishment, a court must consider (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states; a conviction for first-degree criminal sexual conduct is punishable by imprisonment for life or any term of years, but not less than 25 years if the offense is committed by a person who is 17 years of age or older against an individual less than 13 years of age; a 25-year minimum sentence for first-degree criminal sexual conduct committed by a person who is 17 years of age or older against an individual less than 13 years of age is not cruel or unusual in light of the social consequences of sexual offenses against children and given that the 25-year mandatory minimum sentence is similar to the penalty imposed for the same offense in several other states (US Const, Am VI; Const 1963, art 1, § 16; MCL 750.520b[2][b]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *David S. Leyton*, Prosecuting Attorney, and *Vikki Bayeh Haley*, Assistant Prosecuting Attorney, for the people.

*Michael A. Faraone, P.C.* (by *Michael A. Faraone*), for defendant.

Before: SERVITTO, P.J., and MARKEY and K. F. KELLY, JJ.

MARKEY, J. Following a jury trial, defendant was convicted of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(a)(1), for which she was sentenced to concurrent prison terms of 25 to 38 years. She appeals by right. We affirm.

Defendant, a former elementary school teacher, was convicted of engaging in sexual intercourse with a 12-year-old former student from her sixth grade class. The victim had academic and behavioral problems and was suspended from school for fighting with another student at the beginning of the 2007-2008 school year. Defendant intervened on the victim's behalf and persuaded the school principal not to expel the victim from school. After the victim returned to school, defendant invited him to religious activities at her masjid (mosque) and to her home, purportedly to offer him guidance and help him with his anger and academic problems. The victim was subsequently expelled from school after a second fighting incident. After his expulsion, he spent more time with defendant at her home, with his mother's permission.

According to the victim, he and defendant progressed from hugging, to holding hands, to kissing, before eventually engaging in sexual intercourse. The victim testified that he and defendant had sexual intercourse on two different evenings in October 2007. After the second incident, the victim called defendant from his home and inadvertently recorded the call. During the recorded call, the victim referred to defendant as his girlfriend and stated that he was proud to be involved with a grown woman. The victim's mother heard the recording and reported it to the school. The school

board later terminated defendant from her teaching position and that decision was upheld by the tenure commission.

## I. RAPE-SHIELD STATUTE

Defendant argues that the trial court erred by denying her request to cross-examine the victim concerning statements he previously made during a forensic interview in which he related prior sexual experiences with a 13-year-old girl and a 14-year-old girl. The trial court ruled that the evidence was barred by the rape-shield statute, MCL 750.520j. Defendant contends that the exclusion of the evidence violated her constitutional right of confrontation.

This Court reviews a trial court's evidentiary ruling for an abuse of discretion. *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). An abuse of discretion occurs when the trial court reaches a result that is outside the range of principled outcomes. *Id.* at 588-589. Preliminary issues of law, including the interpretation of the rules of evidence and the effect of constitutional provisions, are reviewed de novo. *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007). The constitutional question whether defendant was denied her constitutional right to confront the witnesses against her is reviewed de novo. *People v Breeding*, 284 Mich App 471, 479; 772 NW2d 810 (2009).

At trial, when describing the two acts of intercourse with defendant, the victim testified that defendant placed a condom on his penis and put his penis into her vagina because he did not know how. The trial court denied defendant's request to cross-examine the victim concerning statements he previously made during a forensic interview in which he related prior sexual experiences with a 13-year-old girl and a 14-year-old girl.

.

Michigan's rape-shield statute, MCL 750.520j, provides:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted . . . unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor.
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.
>
> (2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

MRE 404(a) similarly provides, in pertinent part:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> *    *    *
>
> (3) In a prosecution for criminal sexual conduct, evidence of the alleged victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease[.]

In this case, the evidence of the victim's prior sexual experiences that defendant sought to introduce did not fit within the categories of evidence specified in MCL 750.520j(1)(a) or (b). Defendant contends, however, that the evidence was necessary to protect her constitutional right of confrontation.

In certain limited situations, evidence that is not admissible under one of the statutory exceptions may nevertheless be relevant and admissible to preserve a criminal defendant's Sixth Amendment right of confrontation. *People v Hackett*, 421 Mich 338, 344, 348; 365 NW2d 120 (1984). In *Hackett*, 421 Mich at 348-349, our Supreme Court explained:

> The fact that the Legislature has determined that evidence of sexual conduct is not admissible as character evidence to prove consensual conduct or for general impeachment purposes is not however a declaration that evidence of sexual conduct is never admissible. We recognize that in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation. For example, where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted. Moreover in certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge. Additionally, the defendant should be permitted to show that the complainant has made false accusations of rape in the past. [Citations omitted.]

When a trial court exercises its discretion to determine whether evidence of a complainant's sexual conduct not within the statutory exceptions should be admitted, the court "should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's

sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *Id.* at 349. When applying the rape-shield statute, trial courts must balance the rights of the victim and the defendant in each case. *People v Morse*, 231 Mich App 424, 433; 586 NW2d 555 (1998).

Defendant argues that she should have been permitted to cross-examine the victim concerning his prior sexual experiences because his trial testimony falsely portrayed him as a sexually innocent, inexperienced virgin, thereby appealing to the jury's sympathy for a sexually uninitiated victim. We conclude that the trial court did not err by excluding this evidence. The first flaw in defendant's argument is that the victim never stated, directly or indirectly, that his sexual contact with defendant was his first sexual experience. Indeed, when the prosecutor asked the victim why he needed defendant's assistance with the condom and with penetration the second time, the victim stated, "Cause *every time* I did . . . the *girl* put my penis in her vagina for me." (Emphasis added.) We disagree with defendant's contention that this statement could only be understood as referring to the victim's first sexual encounter with defendant. The phrase "every time" refers to more than one occasion, not a single prior incident. Further, the victim's reference to "the girl" suggested someone other than defendant, considering that defendant was a grown woman and that the victim referred to defendant as "Miss Allanah" throughout his testimony. Accordingly, defendant failed to show that the proffered evidence was necessary to impeach the victim's trial testimony.

Furthermore, the evidence was not otherwise relevant. "Evidence is relevant when it has a tendency to make a material fact more or less probable." *People v*

*McGhee*, 268 Mich App 600, 610; 709 NW2d 595 (2005). "Relevance involves two elements, materiality and probative value. Materiality refers to whether the fact was truly at issue." *Id.* The premise of defendant's argument is that a jury would view sexual relations with a 12-year-old virgin as being more egregious than sexual relations with a 12-year-old victim who has already had sexual relations, so it was necessary to place the victim's prior sexual experiences before the jury to defuse the prejudicial inference that defendant was the victim's first sexual partner. But the victim's sexual experience or history was not legally relevant to any issue in the case. Sexual penetration with a person under 13 years of age constitutes CSC-I irrespective of the victim's consent or experience. MCL 750.520b(1)(a).

Accordingly, the trial court did not abuse its discretion by excluding the proffered evidence.

## II. TENURE COMMISSION EVIDENCE

Defendant next argues that the trial court erred when it permitted the prosecutor to cross-examine her concerning the results of her teacher tenure proceeding. We review this evidentiary issue for an abuse of discretion. *Dobek*, 274 Mich App at 93. Evidentiary error does not require reversal unless after an examination of the entire cause, it appears more probable than not that the error affected the outcome of the trial in light of the weight and strength of the properly admitted evidence. MCL 769.26; *People v Whittaker*, 465 Mich 422, 426-427; 635 NW2d 687 (2001).

"Generally, all relevant evidence is admissible, and irrelevant evidence is not." *People v Coy*, 258 Mich App 1, 13; 669 NW2d 831 (2003), citing MRE 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to

the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, MRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Defendant argues that the prosecutor's question regarding the tenure hearing was unfairly prejudicial because it suggested that there had already been a judicial finding of her guilt. She argues that the outcome of the tenure hearing was not relevant because it involved different allegations, such as improper communications with a student, and was decided by a different standard of proof. Plaintiff argues that the question was not improper because defendant opened the door by testifying about the tenure hearing on direct examination.

The record discloses that on direct examination defendant testified that the victim's mother brought the recording of the telephone call between the victim and defendant to defendant's school for school authorities to listen to, but that no one associated with the school or the school board ever gave defendant the opportunity to listen to the recording. According to defendant, she heard the recording for the first time in April 2009, when her attorney for the tenure proceeding allowed her to listen to it. Defendant also testified on direct examination that the school district terminated her employment "[a]s a result of the allegations[.]" On cross-examination, the prosecutor questioned defendant as follows:

>    *Q.* Ms. Benton, you—you have lost your job, that's true, isn't it?
>
>    *A.* Correct.

*Q.* They had a tenure hearing about that, didn't they?

*A.* Yes.

*Q.* So, you had a hearing before you lost your job, didn't you?

*A.* Yes.

*Q.* Wasn't just the allegation. There was actually some process—

\* \* \*

*A.* Correct.

Defendant's direct examination testimony suggested that the school board had treated her unfairly by denying her the opportunity to hear the recording and explain her statements until the tenure commission hearing. Defendant's direct examination testimony opened the door for the prosecution to further question defendant on this subject. The prosecutor's questioning did not expand on the matters raised in direct examination except to elicit defendant's acknowledgement that she was not terminated merely because of "allegations," but rather was afforded a hearing before she lost her job. Accordingly, the trial court did not abuse its discretion in allowing cross-examination on this subject.

To the extent that the prosecutor's last question improperly suggested that there had already been an official determination of defendant's guilt, we conclude any error arising from the question was harmless. The jury had already learned from defendant's direct examination testimony that the school board had terminated defendant's employment following a tenure commission hearing. The potential prejudice arose not from defendant's answer to the question, but rather from the prosecutor's wording of the question. Nonetheless, the

jurors were instructed that the attorney's questions and statements were not evidence, and jurors are presumed to have followed their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998); *Dobek*, 274 Mich App at 66 n 3 (potential prejudice from prosecutor's statement cured by instruction that statements and arguments by counsel are not evidence). Accordingly, it is not more probable than not that any error affected the outcome. *Whittaker*, 465 Mich at 426-427.

Defendant also argues that the question regarding the outcome of the hearing was improper hearsay, and that it violated the Confrontation Clause. Defendant did not object below to the prosecutor's questioning on hearsay or Confrontation Clause grounds, so these claims are not preserved. Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006). Defendant's hearsay and Confrontation Clause arguments are based on her attempt to equate the testimony revealing the outcome of the tenure hearing with an out-of-court statement of the referee who presided at that hearing; however, no statement by the hearing referee was introduced at trial. Rather, defendant merely offered her own knowledge of the outcome of that proceeding. Accordingly, defendant has not established a plain error based on hearsay grounds or the Confrontation Clause.

Defendant further argues that to the extent defense counsel opened the door to this line of questioning, counsel was ineffective. Pertinent here, to establish ineffective assistance of counsel, defendant must establish (1) that her attorney's performance was objectively unreasonable in the light of prevailing professional norms, and (2) that but for counsel's error, it is reasonably probable that a different outcome would have

resulted. *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). Defense counsel's direct examination questioning was intended to show that defendant was treated unfairly by the school board, which did not give her the opportunity to explain her statements on the recording. This line of questioning was a matter of strategy, and this Court will not second-guess defense counsel's judgment on matters of trial strategy. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

### III. MANDATORY 25-YEAR MINIMUM SENTENCE

Defendant lastly argues that her mandatory 25-year minimum sentences for her first-degree CSC convictions are cruel and/or unusual punishments that violate the federal and state constitutions. US Const, Am VIII; Const 1963, art 1, § 16. We review issues of constitutional law de novo. *People v Swint*, 225 Mich App 353, 364; 572 NW2d 666 (1997). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v Dipiazza*, 286 Mich App 137, 144; 778 NW2d 264 (2009) (quotation marks and citation omitted).

As amended by 2006 PA 169, effective August 28, 2006, MCL 750.520b(2)(b) provides that a conviction for CSC-I is punishable by "imprisonment for life or any term of years, but not less than 25 years" if the offense is committed by a person who is 17 years of age or older against an individual less than 13 years of age. Defendant argues that the mandatory 25-year minimum sentence constitutes cruel or unusual punishment because it imposes an excessively long term of imprisonment and precludes judicial discretion to consider mitigating factors or other particular circumstances of the offense and the offender.

The Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel *and* unusual punishment, US Const, Am VIII. If a punishment "passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Nunez*, 242 Mich App 610, 618-619 n 2; 619 NW2d 550 (2000).

In *People v Bullock*, 440 Mich 15; 485 NW2d 866 (1992), our Supreme Court considered whether a statutory mandatory penalty of life in prison without the possibility of parole for possession of 650 or more grams of cocaine was cruel or unusual punishment under the Michigan Constitution. The Court explained that whether a penalty may be considered cruel or unusual is to be determined by a three-pronged test that considers (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states. *Id.* at 33-34. The Court stated that under the Michigan Constitution, the prohibition against cruel or unusual punishment included a prohibition on grossly disproportionate sentences. *Id.* at 32. But, the Court noted that "the *constitutional* concept of 'proportionality' under Const 1963, art 1, § 16 is distinct from the nonconstitutional 'principle of proportionality' discussed in *People v Milbourn*, 435 Mich 630, 650; 461 NW2d 1 (1990), although the concepts share common roots." *Id.* at 34 n 17.

With respect to the first factor, gravity of the offense and the severity of the sentence imposed, defendant argues that her sentences are disproportionate because, considering her own characteristics and the character-

istics of the sentencing offense, she ranks among the least dangerous of offenders in the class of offenders subject to a 25-year minimum sentence under MCL 750.520b(2)(b). She asserts that the offenses did not involve any force, violence, coercion, or trickery, and that the victim did not sustain physical or psychological injury. Further, she has no prior criminal record of any kind, and she contends that "by all accounts she had otherwise led an exemplary life." She maintains that her sentences are unduly harsh in view of the particular offense, which she characterizes as a comparatively benign type of child assault.

We are not persuaded that defendant should be considered a less culpable offender than most persons convicted of CSC-I against a child victim. In *In re Hildebrant*, 216 Mich App 384, 386-387; 548 NW2d 715 (1996), this Court observed:

> Statutory rape, a strict-liability offense, has been upheld as a matter of public policy because of the need to protect children below a specific age from sexual intercourse. The public policy has its basis in the presumption that the children's immaturity and innocence prevents them from appreciating the full magnitude and consequences of their conduct. *People v Cash*, 419 Mich 230, 242; 351 NW2d 822 (1984). Because this policy focuses on the exploitation of the victim, we find that the Legislature did not intend to withdraw the law's protection of the victim in order to protect the offender.

This statement of Michigan public policy conflicts with defendant's attempt to minimize the gravity and severity of her offense. Further, contrary to defendant's assertion that she did not resort to trickery, isolation, or surprise to accomplish the abuse, the evidence showed that defendant offered herself as a mentor and tutor to a particularly vulnerable victim, invited the victim to participate in activities that allowed her to isolate him

in her home, and then gradually introduced physical and emotional intimacy to the relationship that culminated in sexual intercourse. The victim's alleged acquiescence to defendant's conduct cannot be considered a mitigating factor given that "his immaturity and innocence prevent[ed] [him] from appreciating the full magnitude and consequences of [his] conduct." *In re Hildebrant,* 216 Mich App at 386.

Defendant also argues that the mandatory 25-year minimum sentence is unduly harsh compared to penalties for other offenses under Michigan law, including many violent offenses. We are not persuaded that these comparisons render the 25-year minimum sentence disproportionate to the offense. The perpetration of sexual activity by an adult with a preteen victim is an offense that violates deeply ingrained social values of protecting children from sexual exploitation. Even when there is no palpable physical injury or overtly coercive act, sexual abuse of children causes substantial long-term psychological effects, with implications of far-reaching social consequences. The unique ramifications of sexual offenses against a child preclude a purely qualitative comparison of sentences for other offenses to assess whether the mandatory 25-year minimum sentence is unduly harsh.

Finally, defendant invites a comparison of Michigan's mandatory 25-year minimum sentence with the sentencing schemes for like offenses in other states. But our research reveals that several other states have laws that also impose a mandatory 25-year minimum sentence for an adult offender's sexual offense against a preteen victim, regardless of the presence of aggravating factors such as force or violence.[1] Thus, a compari-

---

[1] Ark Code Ann 5-14-103(a)(3)(A) and (c)(2); Cal Penal Code 288.7(a); Del Code Ann tit 11, § 4205A(a)(2); Fla Stat 775.082(3)(a)(4) and

son of Michigan's penalty and penalties imposed for the same offense in other states fails to support defendant's attack on the constitutionality of Michigan's sentencing statute.

For these reasons, we reject defendant's argument that her mandatory 25-year minimum sentences are unconstitutionally cruel or unusual.

We affirm.

SERVITTO, P.J., and K. F. KELLY, J., concurred with MARKEY, J.

800.04(5)(b); Ga Code Ann 16-6-4(d); Kan Stat Ann 21-6627(a)(1)(B) and 21-5503(a)(3); La Rev Stat Ann 14:43.1(C)(2); Mont Code Ann 45-5-501(1)(a)(ii)(D), 45-5-503(4), and 45-5-507(5); Nev Rev Stat 200.366(3)(b) and (c); NC Gen Stat 14-27.2A and 14-27.4A; Or Rev Stat 137.700(2)(b)(D) and 163.375(1)(b); RI Gen Laws 11-37-8.1 and 11-37-8.2; SC Code Ann 16-3-651(h) and 16-3-655; Tenn Code Ann 39-13-522 and 40-35-112(b)(1); Utah Code Ann 76-5-402.1; Wash Rev Code 9.94A.507; W Va Code 61-8B-3(c); Wis Stat 939.616(1r) and 948.02(1)(b).