*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 25, 2025
12:02 PM

Plaintiff-Appellee,

v

No. 366407
Macomb Circuit Court
LC No. 2022-000174-FC

MATTHEW DONALD BENOIT,

Defendant-Appellant.

Before: MALDONADO, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of three counts of first-degree criminal sexual conduct (CSC-I), one under MCL 750.520b(1)(b)(*ii*) (sexual penetration with a victim who is between 13 and 16 years old and related to defendant by blood or affinity); and two under MCL 750.520b(1)(a) (sexual penetration with victim under 13 years of age). Defendant was sentenced to 135 to 480 months' imprisonment for his CSC-I conviction under subsection (1)(b)(*ii*); and 300 to 480 months' imprisonment for each of his CSC-I convictions under subsection (1)(a). The trial court also imposed lifetime electronic monitoring as required by statute. We now affirm defendant's convictions and sentences.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arose out of defendant sexually assaulting his son, the victim, both when the victim was seven years old and again when he was 14 years old. Defendant was born in 1978, while the victim was born in 2007. The events precipitating this case occurred on June 21, 2021. At the time, defendant and the victim were living alone together in defendant's apartment. Defendant was drunk and acting strange, so the victim was attempting to avoid him. However, defendant called the victim into defendant's bedroom, forced the victim down onto the bed, pulled down the victim's pants, and engaged in fellatio on the victim. The victim attempted to get away after defendant grabbed the victim's testicles, but defendant grabbed the victim's arm. The victim was able to pull away, though he was scratched by defendant.

The victim ran outside of the apartment to get help. He used a stranger's cell phone to call his grandmother, defendant's mother, LB. She picked the victim up and took him to the police

station. She relayed the victim's story to an officer, who instructed LB to take the victim to see a sexual assault nurse examiner (SANE). LB did so, and the victim was examined by Sage Stevens, who was qualified as an expert in forensic nursing. In addition to hearing the victim's story, which matched the victim's testimony at trial, Stevens also swabbed the victim's penis and scrotum for DNA.

The swabs were sent to the police lab, where they tested positive for the presumptive presence of saliva. DNA profiles were then prepared and compared, leading to the determination that defendant's DNA was on the victim's penis. Further, because defendant's DNA comprised 92% of the sample, the expert witness testified it likely came from saliva instead of incidental contact.

During a forensic interview performed in the days after the 2021 sexual assault, the victim recalled an occasion in 2014, when he was sexually assaulted by defendant. Pertinently, while still living in the same apartment and when the victim was seven years old, defendant and the victim took a shower together. During it, defendant put the victim's penis in defendant's mouth, and then put his penis in the victim's mouth. Although the victim initially described his memory of the incident as a daydream or flashback, he was insistent it was a real event. Defendant was charged with three counts of CSC-I. Defendant denied all of the assaults and claimed the victim was lying. Defendant explained his DNA likely was on the victim's penis because they lived together and shared soap and a towel.

Before trial, the prosecution notified defendant and the trial court that it intended to introduce other-acts evidence under MCL 768.27a. As relevant to the present appeal, the prosecution sought to admit evidence of defendant's 2002 conviction of attempted child sexually abusive activity (CSAA), MCL 750.92 and 750.145c(2). The conviction arose from defendant taking nude photographs of a 16-year-old girl, CB. Defendant and CB were in a consensual sexual relationship at the time. Defendant objected to the evidence in a written, pretrial filing. The trial court determined the conviction of attempted CSAA was admissible under MCL 768.27a, but evidence of the sexual relationship was not because it did not amount to a listed offense against a minor in light of CB being the age of consent.

During the four-day trial, CB was called to testify by the prosecution. As part of her testimony, she discussed her consensual, sexual relationship with defendant. There were no objections by defendant. CB also informed the jury of defendant taking nude photographs of her when she was 16 years old and being convicted of a crime for doing so. After hearing all the evidence, the parties' arguments, and the instructions from the trial court, the jury found defendant guilty as charged. Defendant was sentenced as already noted. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues there was insufficient evidence to sustain his convictions of CSC-I under MCL 750.520b(1)(a). We disagree.

## A. STANDARD OF REVIEW

A challenge to the sufficiency of the evidence is reviewed de novo on appeal. *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016) (citation omitted). The evidence is

considered in the light most favorable to the prosecution to determine whether a rational trier of fact could conclude that the defendant is guilty beyond a reasonable doubt. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). This Court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## B. LAW AND ANALYSIS

There was sufficient evidence for a reasonable juror to find beyond a reasonable doubt that defendant committed two counts of CSC-I in violation of MCL 750.520b(1)(a).

"It is a fundamental principle of our system of justice that an accused's guilt must be proved beyond a reasonable doubt to sustain a conviction." *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024) (quotation marks and citation omitted). "Accordingly, a conviction that is not supported by sufficient evidence to prove guilt beyond a reasonable doubt violates due process and cannot stand." *Id.*, citing US Const, Ams V and XIV; Const 1963, art 1, § 17. There is sufficient evidence for a guilty verdict when "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Tennyson*, 487 Mich at 735 (citation omitted).

"The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). All conflicts in the evidence are resolved in the prosecution's favor. *Mikulen*, 324 Mich App at 20. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

Defendant challenges the sufficiency of the evidence for his two convictions of CSC-I under MCL 750.520b(1)(a). "The elements of CSC-I in this case are: (1) the defendant engaged in sexual penetration, (2) with a person under 13 years of age." *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014), citing MCL 750.520b(1)(a). Because defendant was sentenced under MCL 750.520b(2)(b), the prosecution also had to prove defendant was over the age of 17 years at the time of the sexual penetrations. In codifying MCL 750.520b(1), "the Legislature intended to punish separately each criminal sexual penetration . . . ." *People v Matuszak*, 263 Mich App 42, 50; 687 NW2d 342 (2004). " 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r).

Defendant effectively acknowledges there was *some* evidence in the form of the victim's testimony about the sexual assault, but claims it was not strong enough to prove the conviction beyond a reasonable doubt. As these claims are related to the assaults that occurred when the victim was seven years old, his testimony related to that incident is relevant. Pertinently, when the victim was seven years old, defendant was at least 35 years old, considering their years of birth—2007 and 1978, respectively. The victim stated the sexual assault occurred in the shower

of the same apartment in which the later assault occurred. On this occasion, defendant put the victim's penis in defendant's mouth while the two were in the shower. The victim testified defendant then instructed the victim to do the same to defendant. The victim did so. Thus, the victim testified about two separate penile-oral penetrations that happened when he was under 13 years old and defendant was over 17 years old.

Defendant argues that there was no corroboration of the victim's story about what happened in the shower at defendant's apartment. However, Michigan statutory law is clear that a victim's testimony about a sexual assault need not be corroborated to be considered sufficient evidence for a conviction. MCL 750.520h ("The testimony of a victim need not be corroborated in prosecutions under [MCL 750.520b].").  Therefore, this argument lacks merit.

Defendant also claims there was insufficient evidence to prove his guilt beyond a reasonable doubt because the victim suggested the event could have been a dream. Defendant mischaracterizes the record evidence. The victim described his initial recall of the sexual assaults inside defendant's shower as being a sort of daydream or flashback. Despite doing so, the victim insisted he knew the event actually happened in real life. In other words, even though the memory of the assault initially *felt like* a daydream or flashback, the victim was certain the event actually occurred.

On the basis of this testimony, the jurors were required to consider the victim's veracity and decide whether they believed he was telling the truth about an actual event. In light of their decision to convict defendant of the two charges of CSC-I under MCL 750.520b(1)(a), the jurors evidently believed the victim. It is up to the jury, not this Court, to weigh the evidence and determine what facts are true. *Hardiman*, 466 Mich at 428. The jury performed its duty in the present case, and there was sufficient evidence available for a reasonable juror to find beyond a reasonable doubt that defendant committed two counts of CSC-I under MCL 750.520b(1)(a). As a result, defendant's claim of insufficient evidence lacks merit.

## III. OTHER-ACTS EVIDENCE

Defendant contends the trial court erred when it permitted the introduction of evidence of his sexual relationship with CB, and the evidence violated his constitutional right to a fair trial. We disagree.

### A. PRESERVATION AND STANDARDS OF REVIEW

Defendant raises both evidentiary and constitutional challenges to the admission of the testimony of CB. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). "An objection based on one ground is usually considered insufficient to preserve an appellate attack based on a different ground." *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). To preserve a constitutional claim, such as one involving the right to due process, a defendant must have objected on the same grounds as raised on appeal. *People v Brown*, 326 Mich App 185, 191-192; 926 NW2d 879 (2019). Before trial, defendant objected to introduction of the evidence on the basis of MCL 768.27a(1), MRE 404(b), and MRE 403. He raised those same arguments during the hearing regarding the

admissibility of the evidence. He did not raise any constitutional challenges to the proposed evidence involving the testimony of CB. Specifically, defendant did not contend admission of the evidence violated his due-process right to a fair trial. Consequently, defendant's evidentiary arguments are preserved, but his constitutional claims are not. See *Thorpe*, 504 Mich at 252; *Kimble*, 470 Mich at 309; *Brown*, 326 Mich App at 191-192.

A preserved evidentiary issue, including the trial court's decision to admit evidence, is reviewed for an abuse of discretion. *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012). An abuse of discretion occurs when the trial court's decision results in an outcome falling outside the range of principled outcomes. *Id*. An issue of statutory interpretation presents a question of law which is reviewed de novo. *People v Miller*, 498 Mich 13, 16; 869 NW2d 204 (2015). Similarly, a preserved claim alleging the violation of a defendant's due-process rights raises a constitutional issue which is also reviewed de novo. *People v Horton*, 341 Mich App 397, 401; 989 NW2d 885 (2022). De novo review "means that we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019).

However, unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *People v McNally*, 470 Mich 1, 5; 679 NW2d 301 (2004). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (citation omitted).

## B. LAW AND ANALYSIS

Any error arising out of the admission of evidence related to defendant's sexual relationship with CB did not result in prejudice to defendant, which also means defendant's right to a fair trial was not violated.

"The United States Constitution and the Michigan Constitution each guarantee that a criminal defendant receives due process of law." *Horton*, 341 Mich App at 401, citing US Const, Am XIV; Const 1963, art 1, § 17. "Implicit in this guarantee is that each criminal defendant enjoys the right to a fair trial . . . ." *Horton*, 341 Mich App at 401. " '[A]n important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence . . . .' " *People v Hana*, 447 Mich 325, 350; 524 NW2d 682, amended 447 Mich 1203 (1994), quoting *Zafiro v United States*, 506 US 534, 540; 113 S Ct 933; 122 L Ed 2d 317 (1993). However, as our Supreme Court has explained, defendant is only "entitled to a fair trial but not a perfect one for there are no perfect trials." *People v Miller*, 482 Mich 540, 559; 759 NW2d 850 (2008) (quotation marks and citation omitted).

Before engaging in an earnest review of the issue presented by defendant, we must first parse the arguments raised by the parties and whether they are applicable to what actually occurred. In defendant's brief on appeal, after summarizing law regarding other-acts evidence solely under

the court rules, he provides only a single sentence of analysis: "There was no apparent connection whatsoever between [defendant]'s dating relationship with an underage female some twenty years earlier and the acts that he was charged with committing against his son." Defendant never mentions the pretrial litigation surrounding the prosecution's proposed use of the other-acts evidence as related to CB. Had defendant done so, he may have realized the primary dispute focused on MCL 768.27a, not MRE 404(b). This is because the statute pertains to "a criminal case in which the defendant is accused of committing a listed offense against a minor," and preempts MRE 404(b) by stating "evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." MCL 768.27a(1). Indeed, the prosecution never sought to introduce the challenged evidence under MRE 404(b), nor have they argued such on appeal.

To further confuse things, defendant does not address the fact that the trial court effectively agreed with him as related to defendant's sexual relationship with CB. As a result, the trial court ordered that evidence of the sexual relationship between CB and defendant was not admissible under MCL 768.27a(1), but the evidence of defendant's conviction of attempted CSAA was admissible. The consensual sexual relationship with CB was not admissible because it occurred when CB was 16 years old, meaning it was not a listed offense under the statute. In fact, as the trial court noted, because CB was 16 years old at the time of the relationship, defendant's consensual sexual relationship with her simply was not a criminal offense of any type. Defendant was never charged or tried on any allegation arising solely out of his sexual relationship with CB.

Despite this ruling by the trial court, CB testified at trial about her relationship with defendant, including their engagement in sexual intercourse, which did not result in an objection by defendant. Contrary to the prosecution's brief, defendant's argument on appeal does not challenge the admission of defendant's conviction of attempted CSAA, as is clear from the sparse law and analysis in his brief. As a result, we are presented with a brief by defendant that addresses an issue on which he won during pretrial proceedings but failed to enforce at trial, and a brief by the prosecution that addresses evidence defendant does not claim was improperly admitted.

Despite this deficient briefing by the parties, we take note that the trial court had ruled that defendant's consensual sexual relationship with CB was inadmissible under MCL 768.27a(1) and the prosecution did not seek to have the evidence admitted under MRE 404(b). Nevertheless, at trial, such evidence was admitted; thus, an error occurred during trial. However, defendant's argument on appeal still must fail because he cannot prove he was prejudiced by the evidence.

Again, defendant's evidentiary issue was preserved, while his constitutional claim was unpreserved. "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015) (quotation marks and citation omitted). On the other hand, unpreserved constitutional claims only warrant reversal when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763.

The challenged evidence was that CB and defendant had a consensual sexual relationship when she was 16 years old and he was 23 or 24 years old. CB testified clearly that she was

-6-

interested in defendant and had sexual intercourse with him under her own free will. Testifying as an adult, she understood why that probably was not a wise decision, given her age at the time, but she did not falter on the issue of consent. Importantly, CB also testified that defendant took nude photographs of her on an occasion or two after they were intimate. Defendant does not challenge the admissibility of the evidence pertaining to his conviction of attempted CSAA arising from the production of those photographs. Thus, a proper understanding of defendant's argument is the evidence of the attempted CSAA conviction and all it entailed should have come in, while evidence of his consensual sexual relationship with CB should have been excluded.

The problem with defendant's argument relates specifically to any possible prejudice from allowing admission of the evidence of his relationship with CB. If the evidence had not been admitted, the jury would have only been aware of defendant taking nude photographs of a 16-year-old when he was an adult. More troublingly, the certificate of conviction, without the foundation laid by CB, which referenced "child sexually abusive comm[ercial] acti[vity]," might imply defendant had taken nude photographs of a random child. Regardless of any personal opinions the jurors might have about an adult having a romantic relationship with a 16-year-old girl, the consensual nature of the sexual relationship with CB arguably put the photographs in a more positive light for defendant. In other words, it would likely have been more damaging to defendant's case if the jury believed he took nude photographs of an unknown 16-year-old girl instead of his young girlfriend. Because admission of the challenged evidence most likely aided defendant's position, which is also the likely explanation for why trial counsel did not object to it after learning the attempted CSAA conviction would be admitted, defendant cannot prove he was prejudiced by the evidence. Because proving prejudice was necessary for his claims for reversal related to both his constitutional and evidentiary arguments, this argument must fail. See *Jackson*, 498 Mich at 257; *Carines*, 460 Mich at 763. Moreover, even if it was arguable that admission of the challenged evidence did not aid defendant's position, defendant has failed to provide this Court with a sound basis on which to hold that it affirmatively appears, more probable than not, that the error was outcome determinative, *Jackson*, 498 Mich at 257, or shown that such error affected the outcome of the trial, *Carines*, 460 Mich at 763.

## IV. SENTENCING ISSUES

Defendant argues his sentences should be vacated and he should be resentenced because (a) the 25-year minimum sentences for his convictions under subsection (1)(a) were disproportionate and amounted to cruel or unusual punishment;[1] (b) the statute requiring the 25-

---

[1] We use "cruel or unusual punishment" when defendant raises claims under the Michigan Constitution alone or both the Michigan and United States Constitutions. When defendant solely refers to the United States Constitution, we use "cruel and unusual punishment." This is because the clauses of the two constitutions differ, with the federal constitution prohibiting cruel *and* unusual punishment, US Const, Am VIII; while Michigan's Constitution prohibits cruel *or* unusual punishment, 1963 Const, art 1, § 16. As our Supreme Court has explained, the clause in the state constitution "is broader than the federal Eighth Amendment counterpart," *People v Parks*, 510 Mich 225, 241; 987 NW2d 161 (2022), which is why "or" will be used when referencing arguments under both constitutions.

year mandatory minimum sentence was an unconstitutional violation of the separation-of-powers doctrine; and (c) being subjected to lifetime electronic monitoring is cruel and unusual punishment under the federal constitution. Binding and applicable caselaw requires us to disagree with each of these claims.

## A. PRESERVATION AND STANDARD OF REVIEW

"To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016) (quotation marks and citation omitted). Defendant argues the 25-year mandatory minimum sentences were cruel or unusual punishments, the statute mandating those minimum sentences was a violation of the separation-of-powers doctrine, and requiring defendant to submit to lifetime electronic monitoring was cruel and unusual punishment. Below, defendant argued his constitutional right to be protected from cruel or unusual punishments would be violated if the trial court sentenced him consecutively instead of concurrently. He did not raise that argument with respect to the 25-year minimum itself, nor to the lifetime electronic monitoring. Defendant did not raise a separation-of-powers argument in any manner. As a result, defendant's claims on appeal are unpreserved because he failed to raise them below. *Id*.

Defendant raises constitutional errors, which, when preserved, we review de novo. *People v Kennedy*, 502 Mich 206, 213; 917 NW3d 355 (2018). De novo review "means that we review the issues independently, with no required deference to the trial court." *Beck*, 504 Mich at 618. Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *McNally*, 470 Mich at 5. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. To show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Randolph*, 502 Mich at 10 (citation omitted).

## B. LAW AND ANALYSIS

Defendant's sentences are constitutionally sound.

Defendant raises a number of challenges to his sentences. First, defendant argues the mandatory minimum sentence of 25 years' imprisonment under MCL 750.520b(2)(b) violates the United States and Michigan Constitutions' prohibitions against cruel or unusual punishments because it requires a grossly disproportionate sentence.[2] This Court recently addressed this exact same issue in a published, and therefore binding, opinion:

---

[2] Importantly, defendant is not contending the sentences were disproportionate as that term is used in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), and its ilk. Instead, defendant's claims

Next, [the defendant] argues that the 25-year mandatory minimum sentence imposed under MCL 750.520b(2)(b) violates state and federal constitutional prohibitions against cruel or unusual punishment. [The defendant], however, acknowledges this Court's decision in *People v Benton*, 294 Mich App 191, 203-207; 817 NW2d 599 (2011), where we upheld the constitutionality of the mandatory 25-year sentence for CSC-I convictions where the victim is under 13 years of age and the defendant is 17 years old or older. Even if we were to disagree with the conclusion in *Benton*, we are strictly bound to follow *Benton*. See MCR 7.215(J)(1). Under *Benton*, the 25-year mandatory minimum sentence is constitutionally sound. [*People v Sattler-VanWagoner*, ___ Mich App ___; ___; ___ NW3d ___ (2024) (Docket No. 362433); slip op at 7.]

The *Benton* Court was clear in stating that the 25-year mandatory minimum when a defendant who is over 17 years of age sexually assaults a child under 13 years of age was not constitutionally disproportionate. *Benton*, 294 Mich App 206 ("We are not persuaded that these comparisons render the 25-year minimum sentence disproportionate to the offense."). We are bound to hold the same as this Court in *Sattler-VanWagoner* and *Benton*. As a result, this argument lacks merit. See *Sattler-VanWagoner*, ___ Mich App at ___; slip op at 7; *Benton*, 294 Mich App at 203-207.

Defendant alternatively argues that the 25-year mandatory minimum sentences under MCL 750.520b(2)(b) was a violation of the separation-of-powers doctrine. Once again, however, binding caselaw states to the contrary. "The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const 1963, art 3, § 2. In a recent, published opinion, *People v Murray*, 341 Mich App 205; 989 NW2d 284 (2022), vacated in part on other grounds 510 Mich 946 (2022), this Court addressed this exact issue in the following manner:

> In *Makowski v Governor*, 495 Mich 465, 482-483; 852 NW2d 61 (2014), our Supreme Court provided an overview of the separation-of-powers doctrine:

---

of disproportionate sentences arise from that term as used in relation to analyses of whether a sentence amounts to cruel or unusual punishment. As this Court explained:

> The Court stated that under the Michigan Constitution, the prohibition against cruel or unusual punishment included a prohibition on grossly disproportionate sentences. [*People v Bullock*, 440 Mich 15, 32; 485 NW2d 866 (1992).] But, the Court noted that "the *constitutional* concept of 'proportionality' under Const 1963, art 1, § 16 is distinct from the nonconstitutional 'principle of proportionality' discussed in [] *Milbourn*, 435 Mich [at] 650 [], although the concepts share common roots." [*Bullock*, 440 Mich] at 34 n 17. [*People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011).]

Because defendant relies on *Bullock* and constitutional claims of cruel or unusual punishments, he has not raised a claim under *Milbourn* related to the principle of proportionality. As a result, such will not be addressed.

While the Constitution provides for three separate branches of government, the boundaries between these branches need not be "airtight." In fact, in designing the structure of our Government and dividing and allocating the sovereign power among three co-equal branches, the Framers of the Constitution sought to provide a comprehensive system, but the separate powers were not intended to operate with absolute independence. The true meaning of the separation-of-powers doctrine is that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free Constitution. [Quotation marks, citations, and brackets omitted.]

"[T]he ultimate authority to provide for penalties for criminal offenses is constitutionally vested in the Legislature." *People v Hegwood*, 465 Mich 432, 436 & n 8; 636 NW2d 127 (2001), citing Const 1963, art 4, § 45 ("The legislature may provide for indeterminate sentences as punishment for crime and for the detention and release of persons imprisoned or detained under such sentences."). Although the judicial power includes the authority to exercise discretion in imposing sentences, the Legislature may limit this sentencing discretion by establishing a specific penalty for a crime. *People v Conat*, 238 Mich App 134, 147; 605 NW2d 49 (1999). "For example, the Legislature may set a minimum and a maximum sentence for a particular offense," and "[c]ourts have no sentencing discretion unless it be conferred upon them by law." *Id*. (quotation marks and citation omitted). "[T]here are offenses with regard to which the judiciary has no sentencing discretion, offenses about which discretion is sharply limited, and offenses regarding which discretion may be exercised under the terms set forth in the sentencing guidelines legislation." [*People v* ]*Garza*, 469 Mich [431,] 434[; 670 NW2d 662 (2003)] (citations omitted). Ultimately, "the Legislature has the exclusive power to determine the sentence prescribed by law for a crime, and the function of the court is only to impose [a] sentence under and in accord with the statute." *Conat*, 238 Mich App at 147 (quotation marks and citation omitted; alteration in original).

[The d]efendant argues that MCL 750.520b(2)(b) violates the separation-of-powers doctrine because the statute deprives a sentencing court of its discretion to consider individualized, mitigating circumstances by mandating a sentence of not less than 25 years. Under the principles and authorities cited in the preceding paragraph, [the] defendant's argument plainly lacks merit because MCL 750.520b(2)(b) represents a permissible exercise of legislative authority to prescribe a mandatory minimum sentence. We hold that in enacting MCL 750.520b(2)(b), the Legislature properly exercised the authority vested in it by Const 1963, art 4, § 45 to provide penalties for criminal offenses; consequently, there was no violation of the separation-of-powers doctrine. [*Murray*, 341 Mich App at 214-216 (first, second, third, and seventh alterations in original; footnote omitted).]

Briefly, this Court in *Murray* held that the statute requiring a person older than 17 years of age convicted of CSC-I after sexually assaulting a person under 13 years of age to be sentenced to a minimum of 25 years' imprisonment, was not a violation of the separation-of-powers doctrine. *Id*. at 216. In other words, the Legislature was well-within its constitutionally delegated powers when it enacted MCL 750.520b(2)(b). *Id*. at 215-216. Because we are bound by the decision in *Murray*, defendant's identical argument necessarily lacks merit. See MCR 7.215(C)(2) and (J)(1).

Defendant's final argument is that lifetime electronic monitoring violated his right to be protected from cruel and unusual punishment under the United States Constitution. Defendant raises an as-applied challenge to the requirement of lifetime electronic monitoring. "A facial challenge involves a claim that there is no set of circumstances under which the enactment is constitutionally valid, while an as-applied challenge considers the specific application of a facially valid law to individual facts." *People v Adamowicz*, 346 Mich App 213, 220; 12 NW3d 35 (2023) (quotation marks and citations omitted). Even so, to the extent defendant may have attempted to raise a facial challenge to lifetime electronic monitoring, it would have failed under *People v Hallak*, 310 Mich App 555, 576-577; 873 NW2d 811 (2015), rev'd in part on other grounds 499 Mich 879 (2016).[3] In that published, and therefore binding opinion, this Court held "that defendant cannot overcome the presumption that his requirement of lifetime electronic monitoring is neither cruel nor unusual." *Id*. at 574.

Just as the defendant in *Hallak*, here defendant also raises an as-applied challenge to the cruel and unusual nature of lifetime electronic monitoring. Defendant asserts that lifetime electronic monitoring is appropriate for serial sexual abusers, but contends he is not one. Instead,

---

[3] Our Supreme Court only vacated the portion of this Court's opinion regarding issues pertaining to sentencing and *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), leaving the relevant portion of the opinion intact. *People v Hallak*, 499 Mich 879, 879-880; 876 NW2d 523 (2016). We further recognize that our Supreme Court recently entered an order in *People v Kardasz*, 513 Mich 1118, 1118-1119; 6 NW3d 405 (2024), scheduling oral argument on the following questions:

> whether: (1) requiring the defendant to register as a sex offender under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*., as amended by 2020 PA 295, effective March 24, 2021 (the 2021 SORA), for the rest of his life constitutes cruel or unusual punishment under Const 1963, art 1, § 16 or cruel and unusual punishment under US Const, Am VIII; (2) lifetime electronic monitoring, when imposed without an individualized assessment of the defendant's recidivism risk and without providing a mechanism for removing the monitoring requirement, constitutes cruel and unusual punishment under US Const, Am VIII or cruel or unusual punishment under Const 1963, art 1, § 16, see generally *People v Betts*, 507 Mich 527; 968 NW2d 497 (2021), but see *People v Hallak*, 310 Mich App 555, 577; 873 NW2d 811 (2015), rev'd in part on other grounds 499 Mich 879; 876 NW2d 523 (2016); (3) lifetime electronic monitoring constitutes cruel and/or unusual punishment as applied in this case; and (4) lifetime electronic monitoring constitutes an unreasonable search in violation of US Const, Am IV or Const 1963, art 1, § 11, see *State v Grady*, 372 NC 509; 831 SE2d 542 (2019), and *Park v State*, 305 Ga 348; 825 SE2d 147 (2019), but see *Hallak*, 310 Mich App at 581.

defendant noted, he had only been criminally convicted of assaulting his son, who he is barred from seeing even when he is released from prison. In other words, given his lack of history as a sexual assaulter, defendant claimed lifetime electronic monitoring is cruel and unusual punishment as applied to him.

This argument by defendant, despite not having identical circumstances to the defendant in *Hallak*, is similar enough to be defeated by the same reasoning. The defendant in *Hallak* was convicted of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with victim under 13 years of age), after he groped the breast of a 12-year-old girl. *Hallak*, 310 Mich App at 559-560. At the time of his conviction, the defendant did not have any criminal record. *Id*. at 567. Nevertheless, under MCL 750.520c(2)(b), the defendant was sentenced to lifetime electronic monitoring because he was over 17 years old when he sexually assaulted the 12-year-old girl. *Id*. at 567-568. In the appeal, he contended lifetime electronic monitoring as applied to him was cruel or unusual punishment, citing to his lack of a criminal record. *Id*. 567.

This Court disagreed, recognizing the lifetime electronic monitoring requirement served several purposes with respect to people convicted of assaulting preteen children. *Id*. at 575-577. This Court summarized the relevant law in the following manner:

> "In deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011); see also *People v Bosca*, 310 Mich App 1, 56; 871 NW2d 307 (2015)[, rev'd in part 509 Mich 851 (2022)]. However, the "dominant test" is the proportionality question, which is "whether the punishment is so excessive that it is completely unsuitable to the crime." *People v Coles*, 417 Mich 523, 530; 339 NW2d 440 (1983)[, overruled on other grounds by *Milbourn*, 435 Mich at 635], citing *People v Lorentzen*, 387 Mich 167, 181; 194 NW2d 827 (1972) (holding that a mandatory minimum prison sentence of 20 years for nonviolent crime of selling marijuana with no individualized consideration was cruel or unusual).

> The goal of rehabilitation is also a consideration. [*People v*] *Dipiazza*, 286 Mich App [137,] 154[; 778 NW2d 264 (2009)], citing *People v Launsburry*, 217 Mich App 358, 363; 551 NW2d 460 (1996). If the punishment "thwarts the rehabilitative potential of the individual offender and does not contribute toward society's efforts to deter others from engaging in similar prohibited behavior," it may be deemed excessive. *Coles*, 417 Mich at 530, citing *Lorentzen*, 387 Mich at 180. However, the "need to prevent the individual offender from causing further injury to society" is an equally important consideration. *Lorentzen*, 387 Mich at 180. In the end, a penalty that is unjustifiably disproportionate to the crime or unusually excessive should be struck down as cruel or unusual. See *People v Bullock*, 440 Mich 15, 30; 485 NW2d 866 (1992).

> Likewise, under a federal as-applied challenge, a limited proportionality comparison also comes into play, as the court must first compare "the gravity of the offense and the severity of the sentence." *Graham* [*v Florida*], 560 US [48,] 60[; 130 S Ct 2011; 176 L Ed 2d 825 (2010)]. This "narrow proportionality

principle" does not require strict proportionality, but only prohibits "extreme sentences that are grossly disproportionate to the crime." *Id*. at 59-60 (quotation marks and citation omitted). Because of that, and the significant deference given to legislative sentencing, it will be the rare case that meets this initial threshold test. See *United States v Young*, 766 F3d 621, 625 (CA 6, 2014); *United States v Cobler*, 748 F3d 570, 575 (CA 4, 2014); *United States v Reingold*, 731 F3d 204, 211 (CA 2, 2013). Indeed, the United States Supreme Court has only found one law that met this stringent test—a South Dakota law that provided for life in prison without parole for a recidivist defendant who passed bad checks. *Solem v Helm*, 463 US 277, 279-284; 103 S Ct 3001, 77 L Ed 2d 637 (1983). And if a case does not meet that initial, narrow proportionality test, we can go no further. See *Cobler*, 748 F3d at 575. [*Hallak*, 310 Mich App at 571-573.]

Engaging in this analysis, this Court recognized there were significant concerns regarding recidivism rates of sexual offenders. *Id*. at 573. The lifetime electronic monitoring addressed that concern by allowing police to track the location of the offender. *Id*. at 573-574. This ensured the person would not enter a school, playground, or other problematic areas. *Id*. at 574. Turning to the harshness of the punishment, this Court acknowledged that lifetime electronic monitoring was not employed in other, potentially more serious crimes, like murder. *Id*. Nevertheless, because of the recidivism rates mentioned above, this Court determined lifetime electronic monitoring was a specific solution for a specific problem—adults who sexually assault children. *Id*. at 574-575. Because the crime is likely to be committed again, and the potential victims are some of the most vulnerable members of modern society, lifetime electronic monitoring was not a disproportionate punishment for someone over the age of 17 years who sexually assaulted a preteen child. *Id*. This Court also noted other states similarly required lifetime electronic monitoring for similar crimes. *Id*. at 575-576. Those states did so because of the need to protect society from further injuries by a particular type of criminal. *Id*.

In light of all of these circumstances, this Court held that the punishment of lifetime electronic monitoring was not cruel and/or unusual as applied to the defendant in *Hallak*. *Id*. at 576-577. This was true, this Court noted, even though the defendant did not have a prior criminal history. *Id*. at 576. Despite the lack of a history of convictions, this Court noted the evidence of "improper sexual acts involving 13 women or children." *Id*. Bearing all of this in mind, this Court affirmed the defendant's sentence of lifetime electronic monitoring. *Id*. at 577.

As noted, while the facts of *Hallak* are not the same as those of the present case, they are sufficiently similar for us to rely on *Hallak* in holding that defendant's sentence of lifetime electronic monitoring was not cruel and unusual punishment. Initially, all of the policy considerations cited in *Hallak* regarding recidivism, the harshness of the penalty, and the need to protect society apply in the present case. Defendant, like the defendant in *Hallak*, urges this Court to overlook those considerations and deem lifetime electronic monitoring unconstitutional as applied to him because of his lack of a history of sexual abuse. This argument is defeated by the record. First, defendant was convicted of attempted CSAA in 2002, after being found guilty of taking nude photographs of a 16-year-old girl. Second, defendant was found guilty of two counts of CSC-I in the present case, which arose out of events that occurred in 2014. The final count of CSC-I occurred in 2021. Therefore, over about 20 years, defendant committed sexual crimes

against minors four times. His victims ranged from 7 years old to 16 years old. This record also revealed a sexual attraction to minor children, which is a specific concern related to the recidivism rates discussed in *Hallak*. Under the circumstances presented, we conclude that defendant's sentence of lifetime electronic monitoring was not cruel and unusual punishment.

Accordingly, for all of the reasons discussed above, defendant's arguments on appeal lack merit, and we affirm defendant's convictions and sentences.

Affirmed.


/s/ Allie Greenleaf Maldonado
/s/ Anica Letica
/s/ Randy J. Wallace