*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DARNELL HOLLAND,

Defendant-Appellant.

UNPUBLISHED
October 21, 2024
9:49 AM

No. 345483
Wayne Circuit Court
LC No. 17-009341-01-FC

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his convictions by nolo contendere plea of two counts of armed robbery, MCL 750.529, one count of first-degree home invasion, MCL 750.110a(2), and two counts of unlawful imprisonment, MCL 750.349b. Defendant was sentenced, as a third-offense habitual offender, MCL 769.11, to 12 to 30 years' imprisonment for each offense. Defendant was also required to register as a sex offender under Michigan's Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*. We affirm defendant's convictions but remand for the entry of an order removing defendant from the sex-offender registry.

Defendant's convictions arise out of events that unfolded on or about October 5, 2017. On or around that day, defendant entered a house armed with a 12-inch-long screwdriver, intending to rob the home. An 11-month-old infant and his nanny were home at the time, and defendant forced the nanny to hold the infant and follow defendant around the house as he searched the rooms looking for money. When the infant's parents returned home, defendant waved the screwdriver at the father in a threatening manner. In response, the infant's father grabbed a firearm. Defendant tried to run away, but the father pursued defendant and eventually subdued him in front of another residence, where police arrived and apprehended defendant.

---

[1] See *People v Holland*, unpublished order of the Court of Appeals, entered March 3, 2022 (Docket No. 345483).

Defendant was charged with two counts of armed robbery, one count of first-degree home invasion, and two counts of unlawful imprisonment. At a plea hearing, defendant accepted a *Cobbs*[2] evaluation of 12 to 30 years' imprisonment, and subsequently pleaded nolo contendere to the charges against him. At his sentencing hearing, defendant argued that he should not be required to register as a sex offender because the conduct for which he was convicted did not involve any sexual activity or anything of a sexual nature. The court rejected defendant's argument, reasoning that defendant had pleaded nolo contendere to the count requiring him to register as a sex offender. The court accordingly sentenced defendant to 12 to 30 years' imprisonment for each count, and required defendant to register as a sex offender under SORA.

On appeal, defendant challenges the requirement that he register as a sex offender under SORA on the ground that, because his crimes were not of a sexual nature, the SORA-registration requirement constitutes cruel or unusual punishment. "To preserve a claim that the defendant's sentences were unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court." *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). While defendant objected to the SORA-registration requirement in the trial court, he did not do so on the ground that it constituted unconstitutionally cruel or unusual punishment, so the issue is unpreserved. See *People v GR*, 331 Mich App 58, 69; 951 NW2d 76 (2020) (explaining that an objection based on one ground fails to preserve an appellate challenge based on a different ground).

This Court reviews unpreserved constitutional issues for plain error affecting substantial rights. *Burkett*, 337 Mich App at 872. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show that the plain error affected defendant's substantial rights, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, brackets, and citation omitted).

"The Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1 §16, whereas the United States Constitution prohibits cruel *and* unusual punishment, US Const Am VIII." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011).

Our Supreme Court recently confirmed that requiring a nonsexual offender to register under SORA is cruel or unusual punishment in violation of Const 1963, art 1, § 16. *People v Lymon*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164685); slip op at 1-2, 37-38 (*Lymon II*). In *Lymon II*, our Supreme Court noted that, in *People v Betts*, 507 Mich 527, 533; 968 NW2d 497 (2021), it held that "the retroactive application of SORA, as amended by 2011 PA 17 and 2011 PA 18 (the 2011 SORA), imposed increased punishment on defendants, thus violating constitutional ex post facto protections." *Lymon II*, ___ Mich at ___; slip op at 2. The Court explained that, while it "was considering the ex post facto challenge in *Betts*, the Legislature enacted 2020 PA 295, effective March 24, 2021 (the 2021 SORA)." *Lymon II*, ___ Mich at ___;

---

[2] See *People v Cobbs*, 443 Mich 276, 283; 505 NW2d 208 (1993).

slip op at 3. The defendant in *Lymon II* was challenging the constitutionality of the 2021 SORA as applied to him. *Id*. at ___; slip op at 4.

The defendant in *Lymon II* was convicted of various offenses, including three counts of unlawful imprisonment. *Id*. at 7. "Because two of the three unlawful-imprisonment convictions involved minors, the trial court also required defendant to register as a Tier I sex offender under SORA." *Id*., citing MCL 28.722(q) and (r)(*iii*). On appeal, this Court "issued a published decision affirming defendant's convictions but remanding for the entry of an order removing defendant from the sex-offender registry." *Lymon II*, ___ Mich at ___; slip op at 7-8, citing *People v Lymon*, 342 Mich App 46, 88-89; 993 NW2d 24 (2022) (*Lymon I*), aff'd in part & vacated in part by *Lymon II*, ___ Mich ___ (2024). This Court in *Lymon I* "concluded that imposition of the 2021 SORA for a crime that lacks a sexual component constituted cruel or unusual punishment." *Lymon II*, ___ Mich at ___; slip op at 8, citing *Lymon I*, 342 Mich App at 88-89. Our Supreme Court granted the prosecutor's cross-application for leave to appeal. *Lymon II*, ___ Mich at ___; slip op at 8, citing *People v Lymon*, 511 Mich 860, 860 (2023).

To address the defendant's constitutional challenge, the Court had to first address whether the 2021 SORA as applied to the defendant constituted "punishment." *Lymon II*, ___ Mich at ___; slip op at 9-10. To do this, *Lymon II* first addressed whether the Legislature intended for the 2021 SORA to constitute criminal punishment, and "conclude[d] that the Legislature intended the 2021 SORA as a civil regulation." *Lymon II*, ___ Mich at ___; slip op at 11. The Court then considered relevant factors from *Kennedy v Mendoza-Martinez*, 372 US 144, 168-169; 83 S Ct 554; 9 L Ed 2d 644 (1963), to determine "whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Lymon II*, ___ Mich at ___; slip op at 13 (quotation marks and citation omitted). After analyzing the *Mendoza-Martinez* factors, our Supreme Court concluded:

> Although the 2021 SORA bears a rational relation to its nonpunitive purpose and the Legislature has continued to express its intention that SORA constitute a civil regulation, SORA resembles traditional methods of punishment, promotes the traditional aims of punishment, and imposes affirmative restraints that are excessive as applied to nonsexual offender registrants. Accordingly, we conclude that the 2021 SORA constitutes punishment as applied to nonsexual offenders. [*Id*. at 30.]

"Having concluded that imposition of the 2021 SORA constitutes criminal punishment as applied to nonsexual offenders," our Supreme Court next considered "whether that punishment is cruel or unusual." *Id*. at 31. The focus of that inquiry concerned whether the punishment is grossly disproportionate. *Id*. This required consideration of the following factors:

> (1) the harshness of the penalty compared to the gravity of the offense; (2) the penalty imposed for the offense compared to the penalties imposed for other offenses in Michigan; (3) the penalty imposed for the offense in Michigan as compared to the penalty imposed for the same offense in other states; and (4) whether the penalty imposed advances the goal of rehabilitation. [*Id*.]

With respect to the first factor, the harshness of the penalty compared to the gravity of the offense of false imprisonment of a minor, the Court stated that "defendant's offense was undoubtedly severe" but that the "offense contained no sexual element and no indication that defendant poses a risk of committing sexual crimes in the future." *Id*. at 31-32. The "penalty of being subject to the sex-offender registry for a nonsexual crime, imposed in addition to a defendant's prison sentence for the nonsexual crime committed, is excessive in comparison to the offense committed and so weighs in favor of a conclusion of gross disproportionality." *Id*. at 32.

Regarding the second factor, the penalty imposed for the offense compared to the penalties imposed for other offenses in Michigan, the Court noted that, "[a]s a Tier I offender under SORA, persons convicted of false imprisonment of a minor suffer the same penalty as" persons convicted of various offenses that "involve a sexual component and often sexual exploitation of a child, unlike defendant's offense." *Id*. 32-33. The false imprisonment of an adult does not subject a defendant to SORA registration. *Id*. at 33. "[T]he comparison of defendant's nonsexual offenses to more-severe sexual offenses that result in a similar penalty and to similar nonsexual offenses resulting in less-severe penalties supports a conclusion that the punishment imposed by the application of SORA to a nonsexual offender is grossly disproportionate." *Id*. at 34.

As for the third factor, the penalty imposed for false imprisonment of a minor in Michigan as compared to the penalty imposed for that offense in other states, the Court noted that "Michigan is in the majority of jurisdictions insofar as it includes certain nonsexual offenses within its sex-offender-registry law." *Id*. The Court found it "somewhat difficult . . . to assess the persuasive value of the inclusion of these crimes in other states' sex-offender-registry laws because the requirements imposed by each state's sex-offender-registry law vary greatly." *Id*. at 35-36. But the Court "conclude[d] that Michigan is in a large majority of states whose sex-offender registries categorize persons who committed nonsexual offenses as sex offenders, and so this factor supports a determination that defendant's punishment is not grossly disproportionate." *Id*. at 36-37.

For the fourth factor, whether the penalty imposed advances the goal of rehabilitation, the Court stated that "the application of SORA to nonsexual offenders like defendant does not support the goal of rehabilitation." *Id*. at 37. "Branding an offender who did not commit a sexual offense as a sex offender and subjecting that offender to the attendant social stigma and law-enforcement supervision of that label does not address the underlying causes of a defendant's conduct or support a defendant's reintegration as a noncriminal member of society." *Id*. Hence, "this factor supports a determination that defendant's punishment is grossly disproportionate to his crimes." *Id*.

The Court thus "conclude[d] that the punishment of SORA registration for nonsexual offenders like defendant is grossly disproportionate and accordingly constitutes cruel or unusual punishment under the Michigan Constitution." *Id*. at 37-38. The Court vacated this Court's opinion in *Lymon I* "insofar as its conclusions went beyond the consideration of nonsexual offenders and affirm[ed] its judgment that defendant and other offenders whose crimes lacked a sexual component are entitled to removal from the sex-offender registry." *Id*. at 38.

Like in *Lymon II*, there are no facts in the present case indicating a sexual component to defendant's offenses. Defendant did not commit a crime that was sexual in nature, and there is no basis to conclude that he poses a danger to the public as it relates to sexual offenses. Under the analysis set forth in *Lymon II*, the punishment of SORA registration for a nonsexual offender like

defendant "is grossly disproportionate and accordingly constitutes cruel or unusual punishment under the Michigan Constitution." *Id*. at ___; slip op at 37-38. Given the cruel or unusual nature of this punishment, the failure to remove defendant from the sex-offender registry would seriously affect the fairness, integrity, or public reputation of the judicial proceedings. Accordingly, defendant must be removed from the sex-offender registry. *Id*. at 37-38.[3]

Affirmed in part but remanded for the entry of an order removing defendant from the sex offender registry. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado

---

[3] In light of our resolution of this issue, we need not address defendant's argument that requiring him to register as a sex offender would constitute cruel *and* unusual punishment under the federal constitution or his other arguments challenging whether he was required to register under SORA.