*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LEON ORLANDO ECHOLS,

        Defendant-Appellant.

FOR PUBLICATION
September 24, 2025
9:23 AM

No. 370709
Wayne Circuit Court
LC No. 89-007735-01-FC

Before: GADOLA, C.J., and MARIANI and TREBILCOCK, JJ.

MARIANI, J.

Defendant, Leon Orlando Echols, appeals by delayed leave granted[1] the trial court's order denying his successive motion for relief from judgment (MFRJ), arguing that, in light of *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and the legal developments that have followed, his term-of-years sentence of 75 to 150 years for second-degree murder violates the Michigan Constitution's prohibition against cruel or unusual punishment. We agree. Accordingly, we reverse the trial court's order denying Echols's successive MFRJ, vacate Echols's sentence for second-degree murder, and remand to the trial court for resentencing consistent with this opinion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In June 1989, approximately one month after he turned 18 years old, Echols fatally shot Flery Ivery following an altercation in a car. While in the backseat of a car, Echols fired five shots at Ivery, who was in the front passenger seat. One bullet struck Ivery's shoulder and another struck his head, ultimately killing him. According to Echols, another passenger in the car hit Ivery, who then "spun around," reached over the back seat, and started attacking Echols, so Echols grabbed a gun already in the car and started shooting at Ivery. Echols further stated that Ivery was "still coming at" him, so he "just kept shooting." Echols was charged with first-degree murder, MCL

---

[1] *People v Echols*, unpublished order of the Court of Appeals, entered September 30, 2024 (Docket No. 370709).

750.316, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for the shooting.

In October 1989, following a jury trial, Echols was found guilty of the lesser-included offense of second-degree murder, MCL 750.317, and of felony-firearm. A sentencing hearing was held in November 1989. Echols's recommended sentencing guidelines range for second-degree murder was a minimum of 10 to 25 years' imprisonment, or parolable life. The trial court chose to depart upward, tripling the top end of the minimum term-of-years recommendation and sentencing Echols to a term of 75 to 150 years' imprisonment for second-degree murder, to be served consecutively to a term of two years' imprisonment for felony-firearm.

After sentencing, Echols directly appealed his convictions and sentences, which this Court affirmed. *People v Echols*, unpublished per curiam opinion of the Court of Appeals, issued February 6, 1992 (Docket Nos. 124510; 124515). Echols did not thereafter seek leave to appeal in our Supreme Court.

In September 2011, Echols, *in propria persona*, filed his first MFRJ under MCR 6.500 *et seq.*, arguing that his term-of-years sentence for second-degree murder was disproportionate under *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).[2] In April 2012, the trial court denied Echols's MFRJ because a proportionality challenge to his sentence for second-degree murder had previously been raised and decided by this Court on direct appeal, and Echols failed to establish good cause for not relying on *Milbourn* when making that argument. Echols, *in propria persona*, filed a delayed application for leave to appeal with this Court, which this Court denied. *People v Echols*, unpublished order of the Court of Appeals, entered June 18, 2013 (Docket No. 312933). Our Supreme Court thereafter issued an order denying Echols's application for leave to appeal because Echols "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v Echols*, 495 Mich 952, 952 (2014).[3]

In January 2023, Echols filed a successive MFRJ under MCR 6.502(G)(2). Echols argued, in relevant part, that in light of *Miller* and the developments in Michigan law that have ensued, his 75-to-150-year term-of-years sentence for second-degree murder for an offense he committed when he was 18 years old was both unconstitutional and disproportionate. The trial court denied Echols's successive MFRJ. In doing so, the court acknowledged that Echols was not procedurally barred from raising his claim for relief because it was based on retroactive changes in law, but the

---

[2] Echols had actually filed a motion to correct an invalid sentence under MCR 6.429(A), but the trial court treated it as an MFRJ under MCR 6.500 *et seq.* because Echols was "no longer entitled to appeal by right or leave[.]"

[3] Justice Cavanagh dissented, explaining that he would have "grant[ed] [Echols's] application for leave to appeal under MCR 7.316(A)(7), vacate[d] [Echols's] sentence, and remand[ed] to the trial court for resentencing" because he believed that "this [wa]s an exceptional case in which [Echols's] sentence [wa]s illegal." *Echols*, 495 Mich at 952 (CAVANAGH, J., dissenting). Specifically, Justice Cavanagh found that the trial court's "threefold upward departure from the high end of [Echols's] guidelines" was disproportionate under *Milbourn*, particularly given Echols's "youth at the time of the offense and his lack of a violent history." *Id*. at 952-953.

-2-

court declined to afford Echols the resentencing relief he requested because, as a defendant convicted of second-degree murder for an offense that occurred when he was 18 years old, the existing caselaw that Echols relied upon—namely, *People v Stovall*, 510 Mich 301; 987 NW2d 85 (2022), and *People v Parks*, 510 Mich 225; 987 NW2d 161 (2022)—did not directly provide such relief to him. Echols, again *in propria persona*, filed with this Court a delayed application for leave to appeal, which this Court granted.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for relief from judgment for an abuse of discretion. *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or makes an error of law." *Id*. at 628-629 (citations omitted). Questions of constitutional law are reviewed de novo. *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022).[4]

## III. CRUEL OR UNUSUAL PUNISHMENT

On appeal, Echols argues that, in light of recent jurisprudence from our Supreme Court and this Court, he is entitled to resentencing relief because his term-of-years sentence of 75 to 150 years for second-degree murder for an offense he committed when he was 18 years old violates the Michigan Constitution's prohibition against cruel or unusual punishment. We agree.

"The Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel *and* unusual punishment, US Const, Am VIII." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). "The Michigan Constitution, in this respect, contains broader language and correspondingly provides greater protection than the United States Constitution." *People v Eads*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 357332); slip op at 9, citing *Stovall*, 510 Mich at 313-314.

In *Miller*, the United States Supreme Court recognized that juveniles "are constitutionally different from adults for purposes of sentencing" and held "that mandatory life without parole [(LWOP)] for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " *Miller*, 567 US at 465, 471. As recognized by our Supreme Court in *Boykin*, the holding in *Miller* stands for the proposition that

---

[4] As the trial court correctly noted, because Echols relied on, in relevant part, the retroactive changes in law brought about by *Miller* and its progeny as the basis for his request for relief, Echols's successive MFRJ has overcome the procedural barrier to filing set forth in MCR 6.502(G)(2). See *Stovall*, 510 Mich at 310-311 (considering the merits of the defendant's claim in his successive MFRJ "[b]ecause *Miller* and *Montgomery* serve[d] as the 'foundation' or 'base' for [his] challenges to the constitutionality of his sentences" and therefore overcame "the procedural bar in MCR 6.502(G)"), citing MCR 6.502(G)(2). Nor is there any reason to conclude that the procedural barriers set forth in MCR 6.508(D)(2) or (3) would apply, given that Echols's MFRJ is based on law handed down after his direct appeal and first MFRJ. See *People v Eads*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 357332); slip op at 5. We therefore focus our discussion on the merits of Echols's MFRJ.

"[y]outh matters in sentencing decisions" and that the mitigating characteristics of youth must be considered by a court when fashioning a sentence for a juvenile defendant. *Boykin*, 510 Mich at 192; see also *Miller*, 567 US at 465, 471, 476 (recognizing that, because "juveniles have diminished culpability and greater prospects for reform," a sentencing court must consider "mitigating qualities of youth"). Four years later, the United States Supreme Court held in *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016), that *Miller* announced a substantive rule of constitutional law that applied retroactively to cases on collateral review.

"Michigan law has evolved in the wake of *Miller*," and our "Supreme Court has looked to and built upon *Miller*'s guiding principles in construing the law of this state with respect to the sentencing of juveniles." *Eads*, ___ Mich App at ___; slip op at 6. For instance, in reviewing a juvenile's sentence for first-degree murder, our Supreme Court in *Boykin* recognized that *Miller*'s principles were not limited to LWOP sentences and held that, "when imposing a term-of-years sentence on a juvenile defendant . . . consideration of youth and its attendant circumstances is . . . required by this state's sentencing jurisprudence." *Boykin*, 510 Mich at 188 (citation omitted). And in *Parks*, 510 Mich at 259, 268, our Supreme Court held that "the logic articulated in *Miller* about why children are different from adults for purposes of sentencing applies in equal force to 18-year-olds," and so sentencing 18-year-old defendants convicted of first-degree murder to mandatory LWOP "constitutes unconstitutionally cruel punishment under Const 1963, art 1, § 16." The Court explained that, "in terms of neurological development, there is no meaningful distinction between those who are 17 years old and those who are 18 years old," and "to treat those two classes of defendants differently in our sentencing scheme is disproportionate to the point of being cruel under our Constitution." *Id*. at 252, 266. Our Supreme Court then made clear that *Parks* applies retroactively to cases on collateral review. *People v Poole*, ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 166813). And very recently, in *People v Taylor*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 166428; 166654); slip op at 13, 37-38, our Supreme Court, for the same reasons discussed in *Parks*, further extended *Miller*'s protections to defendants convicted of first-degree murder who were 19 or 20 years old at the time of the offense.

Our Supreme Court has also applied *Miller*'s principles to juvenile defendants convicted of second-degree murder. Namely, in *Stovall*, 510 Mich at 322, our Supreme Court concluded that "a parolable life sentence for a defendant who commits second-degree murder while a juvenile" constitutes cruel or unusual punishment under Const 1963, art 1, § 16. Applying the four-part test from *People v Bullock*, 440 Mich 15, 30, 33-34; 485 NW2d 866 (1992), the Court reasoned, in sum, as follows:

> Regarding the first two *Bullock* factors, the *Stovall* Court noted that "a parolable life sentence is the most severe penalty that can be imposed for second-degree murder," that this penalty "is particularly severe when imposed on a juvenile, given the important mitigating ways that children are different from adults," and that this severity is only further "heightened by the fact" that juveniles convicted of second-degree murder do not receive the same "significant procedural safeguard[s]" guaranteed to juveniles convicted of first-degree murder by MCL 769.25 and MCL 769.25a "before being sentenced to die in prison." [*Stovall*, 510 Mich] at 314-316. Instead, the Court explained, a juvenile convicted of second-degree murder may receive the same, or even a more severe, sentence than a

-4-

juvenile convicted of first-degree murder, but "with less process" and even though "they have been convicted of a *less* serious offense." *Id*. at 316-318. The Court emphasized, "When a sentence is not on the table for the most serious offense a juvenile can commit, permitting it for a less serious offense is disproportionate and therefore cruel or unusual." *Id*. at 316-317 (citation omitted).

As to the third *Bullock* factor, the *Stovall* Court concluded that it "support[ed] finding a parolable life sentence for a juvenile who commits second-degree murder to be cruel or unusual." *Id*. at 320. The Court cited to a plethora of statutes and caselaw in other jurisdictions, emphasizing that "there is a clear national trend toward treating juveniles less harshly than adults and extending *Miller* beyond just the mandatory LWOP context" and citing, in particular, cases that "all extend[ed] *Miller* to sentences that are de facto life sentences or the functional equivalent of LWOP." *Id*. at 318-319 (citations omitted). The Court further noted that many jurisdictions did not allow parolable life sentences for second-degree murder "for *anyone*, not just juveniles," and only instituted a term-of-years sentence not to exceed a certain length of time. *Id*. at 319-320 (citations omitted). Of all of the out-of-state punishments referenced, the highest maximum sentence allowed for second-degree murder was 60 years. See *id*.

And regarding the fourth *Bullock* factor, the *Stovall* Court concluded that it also supported a finding of unconstitutionality because a parolable life sentence for a juvenile convicted of second-degree murder does not provide the individual with "a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id*. at 320 (quotation marks and citations omitted). The Court first noted that access "to educational and rehabilitative programming" was "vital" to juvenile offenders "to enhance their growth and rehabilitative potential," but "prisoners who receive parolable life sentences are given lower priority when it comes to" access to these programs. *Id*. at 320-321. The Court also noted that the Legislature had clearly demonstrated its intent that "a meaningful opportunity for release is generally available after 60 years" for a juvenile convicted of first-degree murder, and stated that "[i]t [did] not rationally follow that a meaningful opportunity for release for a juvenile convicted of second-degree murder could come after a longer period of incarceration than the maximum served by a juvenile convicted of first-degree murder." *Id*. at 321. [*Eads*, ___ Mich App at ___; slip op at 8.]

Applying this jurisprudence from our Supreme Court, particularly *Stovall*, this Court in *Eads* concluded that a term-of-years sentence of 50 to 75 years for second-degree murder, which the defendant received for a crime he committed when he was 16 years old, violated Const 1963, art 1, § 16. *Id*. at ___; slip op at 1, 13. Following *Stovall*'s lead through each of the four *Bullock* factors, this Court "fail[ed] to see how [the defendant's] 50-to-75-year term-of-years sentence for second-degree murder could pass muster under the Michigan Constitution's prohibition against cruel or unusual punishment, when the parolable life sentence at issue in *Stovall* could not." *Id*. at ___; slip op at 8-13.

To briefly summarize that analysis: As to the first two *Bullock* factors, this Court reasoned that the defendant was "effectively serving a life sentence" given the life expectancy of incarcerated youth, which the defendant would have "to surpass . . . before he may become even *eligible* for parole for the first time." *Id*. at ___; slip op at 9-10. "[S]uch a punishment [is] 'particularly severe when imposed on a juvenile, given the important mitigating ways that children are different from adults,' " and is "in some ways even harsher than the parolable life sentence deemed unconstitutional in *Stovall*," which came with the possibility of parole after 10 years. *Id*. at ___; slip op at 10, quoting *Stovall*, 510 Mich at 314-315. This Court then explained how, "as with the parolable life sentence at issue in *Stovall*, the severity of [the defendant's] term-of-years sentence is only further heightened by its lack of procedural safeguards, which are available to those convicted of first-degree murder but not to those convicted of the less-serious offense of second-degree murder." *Eads*, ___ Mich App at ___; slip op at 11.

As to the third *Bullock* factor, this Court concluded that, "for the same reasons cited in *Stovall*, the 'trend toward treating juveniles less harshly than adults and extending *Miller* beyond just the mandatory LWOP context' likewise supports treating juveniles sentenced to a 50-to-75-year term-of-years sentence for second-degree murder less harshly than similarly situated adults." *Id*. at ___; slip op at 12, quoting *Stovall*, 510 Mich at 318-319 (collecting cases "extending *Miller* to sentences that are de facto life sentences or the functional equivalent of LWOP"). This Court noted that, of the other jurisdictions referenced in *Stovall*, "the only jurisdiction that came close to [the defendant's] sentence was Tennessee, which provided a maximum sentence of 60 years," and "[a]ll other referenced jurisdictions had a *maximum* term-of-years sentence that was the same as or shorter than [the defendant's] *minimum* of 50 years' imprisonment." *Eads*, ___ Mich App at ___; slip op at 12. And as to the fourth *Bullock* factor, this Court explained that, "[g]iven the length of his sentence" and the corresponding lack of educational and rehabilitative opportunities he would receive while incarcerated, "we cannot conclude that [the defendant] stands to receive any more meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation than a juvenile sentenced to parolable life." *Id*. at ___; slip op at 12-13, citing *Stovall*, 510 Mich at 320-321.[5]

The same rationale and result apply here—indeed, with only greater force, given that Echols's term-of-years sentence of 75 to 150 years for second-degree murder is even harsher than the 50 to 75 years that was at issue in *Eads*. Under this sentence, Echols will not even become *eligible* for parole for the first time until well past the life expectancy of individuals incarcerated as adults, let alone as youths, and several decades beyond when he would have first become parole-eligible under the life sentence deemed unconstitutional in *Stovall*. See, e.g., *Eads*, ___ Mich App

---

[5] Subsequently, in *People v Nard*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369185); slip op at 5-8, this Court considered whether a sentence of 60 to 150 years for second-degree murder was unconstitutionally cruel or unusual as applied to the defendant in that case. This Court rejected that as-applied challenge, distinguishing *Eads* on the basis that the defendant in *Nard* had already been released from prison and on parole since July 17, 2024, and could be discharged from parole as early as July 17, 2026. See *id*. at ___; slip op at 5, 7-8.

at ___; slip op at 9-10, 10 n 15.[6]  Had Echols been convicted of first-degree murder as originally charged, he would now be entitled to a resentencing hearing and would be facing a default term-of-years sentence limited to a minimum of 25 to 40 years and a maximum of 60 years.  See *id*. at ___; slip op at 11; *Parks*, 510 Mich at 268; *Stovall*, 510 Mich at 316-317; see also generally *Boykin*, 510 Mich 171; MCL 769.25; MCL 769.25a.  Instead, Echols, "for committing a *lesser* offense" than first-degree murder, is left with a *minimum* sentence that is *15 years higher*—and a maximum sentence that is *90 years higher*—than the default 60-year statutory upper limit for first-degree murder, and "without any of the significant procedural safeguards that must be satisfied to exceed th[e] statutory limits for first-degree murder." *Eads*, ___ Mich App at ___; slip op at 11-12; see also *Stovall*, 510 Mich at 316-317; MCL 769.25a(4)(c).  Such a sentence is out of line with other jurisdictions' punishments as discussed in *Stovall*, and leaves Echols without "any more meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation than a juvenile sentenced to parolable life." *Eads*, ___ Mich App at ___; slip op at 13, citing *Stovall*, 510 Mich at 320-321.

Simply put, as in *Eads*, "we cannot find sound reason to deem [Echols's] sentence constitutionally permissible when the parolable life sentence at issue in *Stovall* was not." *Eads*, ___ Mich App at ___; slip op at 9.  Nor, in light of our Supreme Court's jurisprudence, do we find any such "sound reason" in the fact that Echols was 18 years old at the time of his offense (unlike, for instance, the 16-year-old offender in *Eads*). *Id*. at ___; slip op at 9.  *Parks* has made clear that "the logic articulated in *Miller* about why children are different from adults for purposes of sentencing applies in equal force to 18-year-olds." *Parks*, 510 Mich at 259.  And nothing in *Parks* or *Stovall* (or *Eads*, for that matter) suggests this proposition would not apply in the context of second-degree murder.  Indeed, the defendant in *Stovall* was only one month away from his 18th birthday when he committed the offense at issue in that case.  See *Stovall*, 510 Mich at 332 (ZAHRA, J., dissenting); see also *Parks*, 510 Mich at 252, 266 (holding that, "in terms of neurological development, there is no meaningful distinction between those who are 17 years old and those who are 18 years old," and "to treat those two classes of defendants differently in our sentencing scheme is disproportionate to the point of being cruel under our Constitution").

In sum, we conclude that, under our Supreme Court's jurisprudence and this Court's application thereof, Echols's 75-to-150-year term-of-years sentence for second-degree murder violates the Michigan Constitution's prohibition against cruel or unusual punishment, and Echols is entitled to resentencing as a result.

## IV.  PROPORTIONAL AND INDIVIDUALIZED SENTENCING

Echols also raised in his MFRJ a challenge to his sentence under our state's nonconstitutional principle of proportionality.  See, e.g., *Bullock*, 440 Mich at 34 n 17 (noting that, "although the concepts share common roots," whether a punishment is so disproportionate as to

---

[6] At present, Echols's earliest release date for parole is March 10, 2056, when he would be nearly 85 years old, and his maximum discharge date from his sentence is March 1, 2117, approximately 61 years later.  See Michigan Department of Corrections (MDOC), Offender Tracking Information System <https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=204922> (accessed September 23, 2025).

be unconstitutionally cruel or unusual is legally distinct from whether it violates "the nonconstitutional 'principle of proportionality' discussed in *People v Milbourn*, 435 Mich 630, 650; 461 NW2d 1 (1990)"). Given our conclusion that Echols is entitled to resentencing on the basis of his constitutional challenge, we need not also resolve this additional, nonconstitutional basis for such relief—though we observe, as we did in *Eads*, that we do not see how Echols's sentence could meet our state's proportionality requirement given that it is, for the reasons discussed, unconstitutionally cruel or unusual. See *Eads*, ___ Mich App at ___; slip op at 14-15 (explaining that, "[i]n light of *Miller* and its progeny, [the defendant's] sentence lacks the requisite proportionality" under "our state's proportionality requirement," and is indeed "even more severe in some respects than the life-sentence alternative that our Supreme Court has now deemed so disproportionate as to be categorically unconstitutional for juvenile offenders such as [the defendant]").

We also stress, for purposes of guidance on remand, that the trial court must ensure that its resentencing of Echols is both constitutional and in line with our state's nonconstitutional principle of proportionality; this requires (among other things) consideration of Echols's youth and its attendant characteristics at the time of the offense as potentially mitigating—and not aggravating—factors. See *id*. at ___; slip op at 7, 14-15; see also, e.g., *Boykin*, 510 Mich at 188-189, 192, 195; *Parks*, 510 Mich at 232, 259.[7] Application of the principle of proportionality can result in the imposition of a sentence at or below what is constitutionally tolerable, but what exactly that sentence should be in this case is for the trial court to determine in the first instance on remand.

## V. CONCLUSION

For the reasons discussed, Echols's 75-to-150-year term-of-years sentence is invalid under the Michigan Constitution, and Echols is entitled to resentencing as a result. Accordingly, the trial court's order denying Echols's successive MFRJ is reversed, Echols's sentence for second-degree murder is vacated, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

---

[7] As was the case in *Eads*, we note that, while Echols's 75-to-150-year sentence is unconstitutional regardless of the trial court's specific reasons for imposing it, cf. *Parks*, 510 Mich at 266, the court's stated reasons in this case reflect additional proportionality concerns. For instance, in explaining its chosen sentence, the trial court placed significant emphasis on its perception of Echols's demeanor in the courtroom, describing him as "one cold man" to whom "[l]ife has no value" because he did not "shed a tear" during sentencing and was instead standing with his "arms folded" and an "almost mean look on in his face, staring at me"—whereas, according to the trial court, "[i]f I even believed that I took another's life lawfully, I'd still be just almost doubled over. Just be doubled over." Nothing in the court's comments suggested any recognition of the role that Echols's youth and its attendant characteristics may have played in his apparent reaction to his sentencing and demeanor in the courtroom—let alone any consideration of those factors as potentially mitigating, and in no way aggravating. Given, however, that we dispose of this appeal on the basis of Echols's constitutional challenge and these concerns are not necessary to that disposition, we will not address them further.

We do not retain jurisdiction.

/s/ Philip P. Mariani
/s/ Michael F. Gadola
/s/ Christopher M. Trebilcock